IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 1, 2001 Session

## BERTA MARGARITA DE LOS RIOS LEE v. DANIEL MARK LEE

**A Direct Appeal from the Chancery Court for Shelby County**
**No. D27933-3    The Honorable D. J. Alissandratos, Chancellor**

**No. W2000-01918-COA-R3-CV - Filed June 21, 2001**

This is a divorce case in which wife/mother was awarded custody of the parties' only minor son. Husband/father, acting *pro se,* appeals the trial court's decision with regard to the award of custody, the division of a retirement account, and attorney fees. We affirm.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Daniel Mark Lee, Pro Se

Lee Ann Pafford Dobson, Germantown, For Appellee, Berta Margarita De Los Rios Lee

Paul G. Summers, Attorney General and Reporter, Pamela A. Hayden-Wood, Assistant Attorney General, Nashville, For the Intervenor, State of Tennessee

### OPINION

Berta Margarita de Los Rios Lee ("Wife") and Daniel Mark Lee ("Husband") were married in Torrance, California on December 28, 1990. The parties moved to the Memphis area in 1993, when Husband, a Federal Express Corporation employee, voluntarily transferred. William Alvaro Lee, the only child of the marriage, was born on September 8, 1994. On December 19, 1996, Wife filed a complaint for divorce in the Shelby County Chancery Court on the ground of inappropriate marital conduct averring that Husband was guilty of spousal abuse. The complaint seeks, *inter alia*, custody of William and an injunction restraining Husband from removing William from the physical custody of Wife. A temporary injunction was issued, and on January 29, 1997, a consent order was filed modifying the injunction and granting Husband visitation with William in Memphis for a two week period every month and designating specific two week periods for the first three visitations with subsequent visitations to be set as agreed to by the parties.

On May 9, 1997, Husband filed an answer and counter-complaint on the ground of inappropriate marital conduct and seeking *inter alia,* custody of William. In August of 1997, a consent order was filed appointing a Court Appointed Special Advocate (CASA) volunteer to investigate the circumstances of the case concerning William's custody and to make a report to the trial court. On October 3, 1997, an order was entered granting Wife's motion for temporary custody with the authority to make medical decisions filed in response to Husband's refusal to allow William to have surgery to remove his tonsils. In January of 1998, an order was entered appointing a CASA to serve as guardian and to act on behalf of William. Another consent order was entered setting visitation as agreed by the parties and directing that Wife be allowed daily personal visitation with William during Husband's periods of visitation.

The parties stipulated to the granting of an absolute divorce pursuant to T.C.A. § 36-4-129 (b). A bench trial was held on November 16, 1999. At the beginning of the trial, the chancellor narrowed the issues by questioning parties' counsel as to what the parties had stipulated to and what remained contested issues. On the custody issue, there appeared to be two major factual disputes: 1.) whether Wife had interfered with Husband's visitation; and 2.) the facts surrounding the altercation between Wife and her brother and Husband involving his attempt to photograph Wife's apartment. These facts are part of the comparative analysis made by courts in custody cases.

At the conclusion of the trial, the court took the case under advisement and entered a final decree on January 24, 2000, which granted custody of William to Wife, stating in pertinent part:

> The Defendant/father, who works for Federal Express and has jump seat privileges and discount air fare opportunities, shall have every other weekend visitation with the child, in California, from 6 p.m. on Friday until 6 p.m. on Sunday. In the event that the Defendant/father is unable to exercise his every other weekend visitation, the Defendant/father shall notify Plaintiff/mother via facsimile, not less than forty-eight (48) hours in advance of his inability to visit on that particular weekend. If, for some reason, the Defendant/father is unable to give Plaintiff/mother the faxed notification set forth above, then he is then to send said notification via Federal Express or any other comparable overnight service to the Plaintiff/mother. This is intended to simplify the parties' lives in their post-divorce dealings with one another and to ensure stability and consistency for their minor son.
>
> In addition, the minor child is to place a collect call to the Defendant/father on Monday, Tuesday, Wednesday and Thursday evenings after 5 p.m. pacific time. On Fridays through Sundays, the minor child can call collect to speak with his father, but is not court ordered to do so.

Additionally, the Defendant/father shall be entitled to seven (7) days visitation with the child during the Christmas holidays. In 1999, the seven (7) days is to begin from the day school lets out for the Christmas break at which time he will pick up the child in California and return the child to Plaintiff/mother seven (7) days thereafter. The father is responsible for all travel expenses.

Additionally, the child is presently on the year-round school system and so long as the child remains on the year-round school system, the child will attend school for three (3) months and have one (1) month vacation. During said one (1) month vacation, the Defendant/father is entitled to two (2) weeks, i.e., fourteen (14) days and shall pick up the child from school on the day school lets out for said vacation and return the child to Plaintiff/mother fourteen (14) days thereafter.

The Defendant/father shall have prior written permission from Plaintiff/mother before taking the child for any doctor appointment (other than an emergency) or to have the child's hair cut, or in any way whatsoever alter from the style it is when he receives the child. Neither parent shall remove the minor child from the state in which the child is living or visiting, i.e., California or Tennessee, without prior written permission of the other parent.

The Defendant/father shall continue to pay guideline child support and is presently paying $634.00 per month, which was set two years ago, by wage assignment. The attorneys are directed to re-evaluate the above amount in light of the present earnings of Defendant/father.

Alimony was not requested at trial and was, therefore, not awarded.

As to the division of the marital estate, the decree stated that the parties had stipulated that each party shall be entitled to keep the personal property in their possession, with the exception of a futon couch and CD's that were in the possession of Husband and awarded to Wife. The decree further stated that the parties had stipulated that each would be responsible for their own debts and that the marital home located in Collierville, Tennessee would be placed on the market for sale for not less than $125,000.00, and the proceeds divided equally between the parties. It was further ordered that the marital home remain on the market for one year, and that if after one year from the date of the decree, the house had not sold for a price not less than $125,000.00, Wife was to execute a quit claim deed transferring her interest in the property to Husband. The decree provided that the parties had stipulated that each shall maintain medical insurance coverage for William and shall

equally divide all medical, dental, and other listed expenses not covered. The decree stated that parties had agreed that each shall maintain life insurance for the benefit of the child, and that they shall alternate the child dependency deduction for income tax purposes. The decree awarded one-half of Husband's retirement benefits accrued during the marriage to Wife and also awarded her $3,500.00 in attorney's fees.

Husband moved for a new trial or in the alternative for an amendment. In the order denying a new trial, the trial court modified the final decree of divorce making Wife responsible for 25% of any actual out-of-pocket travel expenses Husband incurs in the exercise of his visitation rights. Further modifications to the decree were made specifying visitation arrangements for Easter, July 4th, Thanksgiving, Father's birthday, Mother's Day, and Father's Day. Husband has appealed, presenting the following issues for review as stated in his brief:

> 1. Whether or not T.C.A. § 36-6-101 (a)(1) is facially unconstitutional?
> 2. Whether or not case law in mandating that the trial court infringe upon fundamental liberty and privacy interests violated Appellant's right to due process and equal protection?
> 3. Whether or not the effect of systemic maternal bias in Shelby County Courts violated Appellant's right to equal protection?
> 4. Whether or not Appellant's rights to due process and equal protection were violated by the trial court's issuance of an injunction to maintain the status quo?
> 5. Whether or not judicial discretion was abused in issuing an injunction to maintain the status quo?
> 6. Whether or not Appellant's right to due process was violated and judicial discretion abused by a suspension of a consent order between the parties?
> 7. Whether or not Appellant's right to due process was violated and judicial discretion abused in holding a motion for specific visitation in abeyance?
> 8. Whether or not judicial discretion was abused in awarding Plaintiff temporary custody?
> 9. Whether or not Appellant's right to due process and equal protection were violated by injunctions issued against him at trial?
> 10. Whether or not judicial discretion was abused by the issuance of injunctions against Appellant at trial?
> 11. Whether or not the trial court erred in the division of the Appellant's retirement account?
> 12. Whether or not judicial discretion was abused by trial court awarding court costs and attorneys fees to Plaintiff?
> 13. Whether of not judicial discretion was abused in refusing to hear arguments on marital property at a hearing for a motion for retrial?

14. Whether or not the trial court erred by not granting a retrial?

Since this case was tried by the trial court sitting without a jury, Tennessee law requires that we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. Tenn.R.App.P. 13(d). However, in this case, the trial court made no findings of fact. The final decree of divorce states what the parties have stipulated and simply concludes, without explanation, that Wife is entitled to custody of the minor child. Within Appellee's brief is a section entitled "ruling of the court" containing a transcript of proceedings dated November 16, 1999, the same date as that of the trial transcript contained in the record; however, the transcript of the rulings from the bench are not included in the record. Pursuant to Tenn.R.App.P. 13(c), we are limited to the facts "established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to rule 14."

There was nothing found as a fact to which we may attach the presumption of correctness. Therefore, we will review the record *de novo* to determine where the preponderance of the evidence lies. **Brooks v. Brooks,** 992 S.W.2d 403, 405 (Tenn. 1999) (citing **Devorak v. Patterson,** 907 S.W.2d 815, 818 (Tenn. Ct. App. 1995); **Goodman v. Memphis Park Comm'n,** 851 S.W.2d 165, 166 (Tenn. Ct. App. 1992); and **Kelly v. Kelly,** 679 S.W.2d 458, 460 (Tenn. Ct. App. 1984)).

According to the record, the facts are as follows: Prior to the parties' marriage, Husband served in the Navy from 1983 through 1988 and was trained in electronics and radar operation. Upon receiving an honorable discharge, Husband returned to California where he grew up and began attending El Camino College where he met Wife. Before parties were married, Husband was employed by Flying Tigers and later by Federal Express after a merger of the two companies. At the time of the trial, Husband's annual income was approximately fifty thousand dollars ($50,000.00).

Wife was born in Mexico City but lived in Boston, Massachusetts for approximately two and one-half years while her father obtained a Masters degree in economics. After her family's return to Mexico City, she remained there through high school, after which she moved to Los Angeles, California with her family when her father accepted employment there. Wife has a degree in Research and Mental Health and at the time of the trial was employed by a California school district with an annual income of approximately $32,000.00. She also was working on her Masters degree in special education at that time.

Wife testified that after the parties moved to Collierville, Husband began verbally and physically abusing her. Wife stated that in December of 1995, she swore out a warrant against Husband to have him arrested for domestic violence, however the charges were dropped by the court. Wife characterized Husband as a controlling individual and stated that he tries to impose his beliefs on others. Wife expressed concern that these characteristics would be detrimental to William if Husband had custody. Wife testified that although William was present during at least one altercation between the parties, Husband did not abuse William. In September of 1996, upon the deterioration of the parties' marriage, Wife left Collierville with William and traveled to Torrance,

California. Wife and William stayed with her sister. Subsequently, Wife obtained employment as a special education teacher and moved to her own apartment with William. Wife testified that before leaving Collierville, she had informed Husband that if his treatment of her did not improve, she would leave. At the time that she left Collierville, Wife was concerned because William was witnessing Husband's abuse of her, and she felt that her son would be safer away from Husband.

Husband testified that prior to Wife filing for divorce, he visited William in California many times and brought William to Tennessee for at least two visits, one lasting two weeks and the second lasting three weeks. Wife testified that she does not recall any occasion when William visited Husband in Tennessee without her presence prior to her filing for divorce. She stated that she brought William to Tennessee one time for a Halloween visit after her departure and before filing for divorce. Wife stated that on that occasion she drove to Tennessee, but that she and William stayed only for the weekend. Husband testified that in 1996, he wanted to keep William in Tennessee seven weeks around the Christmas holiday and that Wife did not want Williams to stay for such an extended period. Husband testified that the parties' disagreement over the seven week vacation is what prompted Wife to file for divorce in December of 1996. Wife agreed that there was a disagreement regarding visitation in December of 1996 and claims to have filed for divorce and obtained an injunction because Husband had threatened to take William away from her for nine weeks for Christmas vacation.

After Wife's filing for divorce, an injunction was issued prohibiting Husband from removing William from the physical custody of Wife and maintaining the status quo. On January 29, 1997, a consent order was entered allowing Husband visitation for a two week period every month and specifically setting the first three visitations, with the subsequent visitations to be reasonably set by the parties. Husband testified that under that consent order, he had three, possibly four, visits with William between January and September of 1997. Wife testified that at the end of the September visit, Husband did not return William to her until two weeks after the date that she expected him to be returned. Husband, however, testified that the delay was caused by his confusion over a letter from Wife in which she specified when she expected the child's return. In addition, Husband testified that although the consent order did direct him to limit his visits to two-week periods, he was unaware of the contents of the consent order at that time, and that upon the direction of his attorney to return the child directly to Wife, he complied.

Other incidents involving Husband's visitation include one in which Husband had visitation with William on the weekend before he was to begin kindergarten in the Lennox school district in California. Wife testified that Husband was aware that William was to begin kindergarten; however, he did not bring the child for the first day of class as agreed. Wife stated that the parties discussed the arrangements numerous times, including when she took William to brunch the day before his first day of school. Wife stated that she was unable to reach Husband by telephone when he did not show up at the appointed time. Husband disputed that he was aware that he was to bring William to school and stated that he and Wife had never come to any agreement about William's first day of kindergarten. He stated that on that day he had planned a trip to a museum with William. When asked by the Court why he did not take the child to kindergarten, Husband testified that it was

because the parties "had not jointly agreed that he would attend school there." In addition, Husband claims he did not take the child to school because the school is dangerous, and that he still felt that William should not attend school there.

On one occasion, approximately eighteen months prior to trial, upon returning William to Wife's home, Husband entered Wife's apartment without objection. At some point after entering the apartment, Husband took a camera from his bag and began taking pictures of Wife's home. In response, Wife attempted to reach the camera and to stop what she considered to be Husband's intrusion upon her privacy. Wife testified that he continued taking pictures over his head and laughed at her attempts to stop him. Wife called to her brother, who was in another room, who came to Wife's aid. Both Wife and her brother physically removed Husband from the apartment. Husband testified that Wife never asked him to stop taking pictures but immediately attacked him and called her brother. Wife testified to the contrary that she did ask him to stop before physically removing him from her home with her brother's help. Wife called the police but no citations were issued. It is undisputed that William witnessed the incident.

Husband testified to Wife's interference with his visitation stating that in August of 1999, he was unable to locate Wife or William for a period of time. Finally, Husband did speak on the telephone with William; however, Husband still did not know the location of the child. Wife testified that she had been in Italy, and William had been with a family member during that time. She had not informed Husband of their whereabouts as she was afraid that he would take William while she was away. In addition, Husband testified that Wife does not have William return his phone calls and that she is often hard to contact. Husband stated that Wife has cut short his visitations. On one occasion, Wife took William in the middle of his visitation and did not return him stating that he had a soccer game and that she was going to have the police at the field and that Husband should stay away.

Husband testified that he had attended parenting and CPR classes in an effort to make himself a better parent. He also claimed to have abided by the CASA recommendations as to visitation, which he understood to be that he should give forty-eight hours advance notice of his intent to visit William and one week advance notice if he intended to bring William back to Tennessee. Husband testified that it was difficult for him to make arrangements for visitations, because Wife was hard to get in touch with and when he was able to reach her, she often denied him visitation saying that they had something planned.

Wife denied that she had interfered with Husband's visitation with William and stated that she encourages visitation and has on many occasions made accommodations when Husband wanted to come to California. Wife testified that she has an answering machine on her home phone and her cell phone and that she has returned Husband's calls on the one or two occasions that he requested that she call back. She stated, however, that most of the time Husband simply leaves messages stating when she should have William at Husband's mother's home, where he picks up William for visitations.

One of the parties' conflicts centered around the fact that Husband repeatedly cut William's hair in a short "military" fashion against Wife's wishes. Husband testified that he thought Wife made too much of a hair cut. Wife testified that she thought that Husband's refusal to respect her wishes showed his disrespect for her and the court order giving her temporary custody.

Before addressing the trial court's determination of custody, which is the main issue of this appeal, we will address Husband's constitutional arguments. In his first issue, Husband questions the constitutionality of T.C.A.§ 36-6-101(a)(1)[1], which allows courts to award custody of a minor child in a suit for annulment, divorce or separate maintenance. According to the record, Husband did not raise this issue in the court below. An appellant may not raise an issue for the first time on appeal. *State Dept. of Human Services v. Defriece,* 937 S.W.2d 954, 960 (Tenn.Ct.App.1996) (citing *Simpson v. Frontier Community Credit Union,* 810 S.W.2d 147, 153 (Tenn.1991); *Lawrence v. Stanford,* 655 S.W.2d 927, 929 (Tenn.1983)). *See also Chadwell v. Knox County,* 980 S.W.2d 378, 384 (Tenn.Ct.App.1998) (appellate court declines to consider a theory relating to the Tennessee Solid Waste Disposal Act, ( T.C.A. § 68-211-101), as the theory was not raised at trial); and *Presley v. Hanks,* 782 S.W.2d 482, 490 (Tenn.Ct.App.1989) (appellate court declines to construe the term "legal issue").

In *Lawrence v. Stanford*, 655 S.W.2d 927 (Tenn.1983), the Supreme Court addressed an issue regarding the constitutionality of a statute stating:

> We express no opinion respecting the constitutional validity or invalidity of T.C.A., Sec. 63-1234, and we hold that the Court of Appeals erred in considering that issue. It was error for that court to adjudicate the constitutional issue because that question had not been raised at any point in the proceedings in the trial court.
>
> It has long been the general rule that questions not raised in the trial court will not be entertained on appeal and this rule applies to an attempt to make a constitutional attack upon the validity of a statute for the first time on appeal unless the statute involved is so obviously unconstitutional on its face as to obviate the necessity of any discussion.

---

[1] (a) (1) In a suit for annulment, divorce or separate maintenance, where the custody of a minor child or minor children is a question, the court may, notwithstanding a decree for annulment, divorce or separate maintenance is denied, award the care, custody and control of such child or children to either of the parties to the suit or to both parties in the instance of joint custody or shared parenting, or to some suitable person, as the welfare and interest of the child or children may demand, and the court may decree that suitable support be made by the natural parents or those who stand in the place of the natural parents by adoption. Such decree shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case may require.

*Id.* at 929 (citations omitted).

Husband contends that T.C.A. § 36-6-101(a)(1) is facially unconstitutional, thereby obviating the necessity for raising the issue below. He asserts that the statute does not require a showing of harm to the child. In *Hawk v. Hawk,* 855 S.W.2d 573, 580 (Tenn. 1993) our Supreme Court held that the harm to the child involved in a divorce proceeding is implicit:

> By holding that an initial showing of harm to a child is necessary before the state may intervene to determine the "best interests of the child," we approve the reasoning of both Tennessee and federal cases that have balanced various state interests against parental privacy rights. Implicit in Tennessee case and statutory law has always been the insistence that a child's welfare must be threatened before the state may intervene in parental decision-making. *In a divorce case, for example, the harm from the discontinuity of the parents' relationship compels the court to determine child custody "as the welfare and interest of the child or children may demand...."* T.C.A. § 36-6-101 (1991). In child abuse and neglect proceedings the state seeks to prevent physical harm to the child. T.C.A. § 37-1-113-- 37-1-114 (1991). Moreover, in *Matter of Hamilton,* 657 S.W.2d 425 (Tenn.Ct.App.1983), the court declared a child "dependent and neglected" when her father refused cancer treatment for her on religious grounds. The *Hamilton* court held that "it is well-settled that the state as *parens patriae* has a special duty to protect minors and, if necessary, make vital decisions as to whether to submit a minor to necessary treatment where the condition is life-threatening...." *Id.* at 429. Tennessee law, thus, upholds the state's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child.

*Hawk,* 855 S.W.2d 580 (emphasis added) (footnote omitted).

Because the harm to a child is implicit in a divorce proceeding, parents involved in such a proceeding automatically submit the issue of custody of a minor child to the court. In addressing an argument based on interference with parental rights, the Middle Section of this Court identified divorce as one circumstance that "invites, and indeed requires, governmental intervention" into parents constitutionally protected fundamental liberty interest in the care and custody of their children. *Julian v. Julian,* No. M1997-00236-COA-R3-CV, 2000 WL 343817 at *4 (Tenn. Ct. App. April 4, 2000). Only courts have the authority to dissolve a marriage, and in so doing they are called upon to reorder parties' rights and obligations. *Id.*

Accordingly, we find that Husband's argument that T.C.A. § 36-6-101(a)(1) is facially unconstitutional is without merit, and therefore decline to address the issue not raised in the trial court.

We will address Husband's issues 2, 3, 4, 6, 7, and 9 together, as they raise the question of whether Husband's right to equal protection and right to due process were violated in the proceedings below. In the afore-listed issues, Husband asserts that his fundamental liberty and privacy interests have been infringed upon by case law, the effect of systemic maternal bias in the Shelby County courts, the trial court's issuance of an injunction to maintain the status quo, the trial court's suspension of a consent order, the trial court's failure to issue a pre-trial order regarding specific visitation, and the issuance of injunctions against him thereby constituting a violation of his right to due process and/or his right to equal protection. Again, Husband has raised these issues for the first time on appeal.

In *Barnhill v. Barnhill,* 826 S.W.2d 443, 458 (Tenn. Ct. App. 1991), this Court held that the appellant had waived the issue of whether his due process and equal protection rights had been violated because a non-lawyer judge decided the issues of the custody of the children and the parties' property rights. The appellant contended that the trial court judge should have recused himself. The *Barnhill* Court declined to address the issue as it was not raised in a motion or objection in the trial court. *Id.* (citing *Campbell County Board of Education v. Brownlee-Kesterson, Inc.,* 677 S.W.2d 457 (Tenn. Ct. App. 1984)).

There is nothing in the record to indicate that Husband raised an objection at the trial court level regarding his due process or equal protection rights. Therefore, these issues are waived.

In issue 5, Husband contends that the trial court abused its judicial discretion in issuing an injunction to maintain the status quo. Husband asserts that when the complaint for divorce was filed he was playing a significant, if not primary, role in William's life and that the granting of the injunction "effectively created a protected zone around the mother, and allowed her to build an environment for the child." Husband asserts that the injunction had a detrimental effect on the trail court's consideration of the custody issue pursuant to T.C.A. § 36-6-106.

The chancellor signed a *fiat* for injunction, but the injunction does not appear in the record. However, the record does contain a consent order dated January 29, 1997 modifying an injunction prohibiting Husband from removing William from the physical custody of Wife, maintaining the status quo, and setting a temporary visitation schedule. Pursuant to Tenn. R. Civ. P. 65.07, in domestic relations matters, injunctions or restraining orders upon conditions and terms may be issued by the court and remain in force for such time "as shall seem just and proper to the judge to whom application therefore is made...." *See Wilson v. Wilson,* 987 S.W.2d 555, 565 (Tenn. Ct. App. 1998) (on appeal the Court affirmed trial court's issuance of an injunction against one parent's attempt to alienate the child from the other parent). Nothing in the record indicates that the trial court abused its discretion in issuing an injunction. Moreover, as noted, the injunction was modified by the terms of the consent order. Husband appears to argue that in some manner the injunction had some effect on the chancellor's consideration of the primary custody issue. We do not glean this from the record. This issue is without merit.

In issue 6, Husband asserts that his right to due process was violated and that the trial court abused judicial discretion by suspending a consent order between the parties. As previously stated herein, we decline to address Husband's contention regarding violations of his right to due process as the issue was not raised below. *Barnhill v. Barnhill,* 826 S.W.2d at 458. Husband asserts that a consent order was entered allowing him to bring William to Tennessee for three two week periods with fixed dates and that thereafter two week visitations would be set by agreement by the parties. Husband contends that the first three visitations went as planned, however on the forth visitation, there was a misunderstanding as to the date he was to return the child and who was to provide transportation. Husband contends that the trial judge ordered him to immediately return William, and orally suspended the consent order indefinitely, setting no further dates for visitation. Husband asserts that such suspension was an infringement on his fundamental right to parent and was an abuse of judicial discretion.

As previously stated herein, divorce requires governmental intervention into constitutionally protected fundamental liberty interest in the care and custody of the parties' children. *Julian,* 2000 WL 343817 at *4. We find no abuse of discretion in the courts suspension of the consent order regarding visitation. Additionally, the final decree and modifications thereto specify the terms of Husband's visitation rendering the issue of the previous suspension of visitation moot.

In his seventh issue, Husband contends that his right to due process was violated and judicial discretion abused by the trial court in holding a motion for specific visitation in abeyance. Again, as discussed previously herein, we will not address Husband's contentions regarding his right to due process as they were not raised in the court below. Husband asserts that approximately two weeks after the consent order was suspended, he filed a motion for specific visitation. He asserts that the order on temporary custody and motion for specific visitation reflects that no court order of visitation was granted. Husband contends that although an order appointing a CASA to investigate was entered on August 5, 1997, no CASA investigator was assigned until January of 1998. Subsequent to the investigation, a consent order was entered on January 28, 1998; however, the order only allowed Husband visitation away from Tennessee. Husband asserts that the order expired in February of 1998, leaving his relationship with William unprotected. Husband asserts that not until the completion of the CASA investigation was he allowed visitation with William in Tennessee. Husband asserts that for only 7 months of the 35-month period from the filing of the complaint until the trial did the court protect his relationship with William. Husband further asserts that all allowed visitation was granted through consent orders. Husband asserts that the trial court abused its discretion in not ordering immediate and substantial contact between him and William.

Although we appreciate Husband's frustration with the delay in the matters before the trial court, we find no abuse of discretion by the trial court. T.C.A. § 36-6-301 provides in pertinent part:

> After making an award of custody, the court shall, upon request of the non-custodial parent, grant such rights of visitation as will enable the child and the non-custodial parent to maintain a parent-child relationship...

-11-

As directed by the statute, after the award of custody, in the final decree and modifications thereto, the trial court provided for specific visitation. We find no abuse of discretion by the trial court with regard to its award of visitation.

In his eighth issue, Husband contends that the trial court erred in granting Wife temporary custody of the child. Husband contends that it was not necessary for the court to issue an order of temporary custody in order for William to receive surgery, and that William could have been treated by the pediatricians who had seen and treated him in Tennessee. Husband asserts that Wife was trying to limit his involvement in William's life and that had the trial court not awarded temporary custody, William would have received treatment in Tennessee.

On October 3, 1997, the trial court awarded Wife temporary custody and authority to make medical decisions on behalf of the child. The record supports that the entry of this order was in response to William's need for a tonsillectomy which Husband had opposed. Husband offers *Tompkins v. Rainey,* No. W1999-01218-COA-R3-CV (July 11, 2000), in support of his contention that the trial court abused its discretion in awarding temporary custody to Wife. *Tompkins,* involves a father's challenge to the trial court's award of custody to the mother. *Id.* at *2. In *Tompkins,* the father argued that the trial court applied the wrong standard in making the custody determination by placing the burden on the father to prove that the mother was an unfit parent, rather than applying the appropriate comparative fitness analysis. *Id.* at *4. On appeal the *Tompkins* Court rejected the father's argument, finding that the record supported that the trial court properly applied the "best interest" and "comparative fitness" analyses. *Id.* In addition the *Tompkins* Court supported the trial court's emphasis on the mother's role as the child's primary caretaker in making the decision of custody. *Id.*

Husband argues that the holding in *Tompkins* supports his claim that he should receive custody of William, because until Wife left Tennessee, he was Williams' primary care provider. Although the record affirms that Husband was active in the care of William before the child left Tennessee, Wife had far more interaction with the child than did the father in *Tompkins.* In addition, and more to the point, the holding in *Tompkins* has no application to the temporary award of custody based on William's need for medical treatment. The trial court did not abuse its discretion in awarding Wife temporary custody and the authority to procure needed medical treatment for William.

In issue 10, Husband asserts that the discretion of the trial court was abused in issuing injunctions against him at trial. Appellant's brief identifies seven "injunctions issued at trial": 1.) the award of custody of William to Mother; 2.) the award of every other weekend visitation with Father; 3.) that Father will be entitled to seven days visitation during the Christmas holidays; 4.) that Father is entitled to two weeks of visitation during William's one month vacation; 5.) that Father shall gave prior written permission from Mother before taking William for any doctor appointment (other than emergency); 6.) that Father not have William's hair cut; and 7.) that neither parent remove William from the state in which he is living or visiting....without prior written permission of the other parent.

According to Tennessee law, the court is required to determine which parent is a comparatively more fit custodian. ***Gaskill v. Gaskill,*** 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). The court's primary concern is the welfare of the minor child, ***Ruyle v. Ruyle,*** 928 S.W.2d 439, 441 (Tenn. Ct. App. 1996), and the determination of custody turns on the particular facts of each case. ***Koch v. Koch,*** 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). The Tennessee Constitution grants the legislature the authority to enact divorce statutes. ***Whitaker v. Whitaker,*** 957 S.W.2d 834, 836 (Tenn. Ct. App. 1997) (citing Tenn. Const. art. XI, § 4). With regard to child custody determinations, T.C.A. § 36-6-106 lists factors that a trial court is to consider in making a "comparative fitness" analysis as follows:

> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; ...
>
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
>
> (6) The home, school and community record of the child;
>
> (7) The reasonable preference of the child if twelve (12) years of age or older....
>
> (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;....
>
> (9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
>
> (10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

T.C. A. § 36-6-106 (Supp.2000).

On appeal, Husband contends that the trial court erred in awarding custody of William to Wife, because a consideration of the preceding factors does not indicate that Wife is the more fit parent. Husband maintains, *inter alia,* that the emotional ties between himself and William should be supported; however, Wife's behavior demonstrates that she is not supportive of the father/son relationship. Husband contends that Collierville is a safer environment for William than Torrance, California and that the school system in Collierville is superior to the Lennox school district, where William is currently enrolled. Husband asserts that Wife has not demonstrated an intent to facilitate and encourage a close continuing relationship between himself and William consistent with the best interest of the child.

From our review of the record, we find that the trial court was not in error in awarding custody to Wife. The parties' testimony differs on several points as to the arrangements for Husband's visitation and the behavior of both parties. Although the trial court reprimanded Wife for leaving the country without informing Husband of her whereabouts, it appears that generally the trial court found Wife's testimony more credible. When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d at 837. The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id*.; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

Furthermore, although there is no evidence to support that Husband is an unfit parent, such a finding is not necessary to award custody to Wife. We emphasize, as did the Court in *Griffin v. Stone* 834 S.W.2d 300, 304-04 (Tenn. Ct. App. 1992), that it is not necessary to find that one parent is an unfit parent in order to award custody of a child to the other parent, when it is in the child's best interest. This Court has the responsibility of placing children in a home with the person or persons it deems most fit to do so. *Id.* Although the CASA recommendations express concerns that Wife may be unwilling to allow Husband any visitation with William outside the scope of a court order, CASA recommended that Wife receive custody of William. Weighing all relevant factors and considering the evidence in the record, we cannot disagree with the trial court's award of custody to Wife and therefore affirm the trial court in its decision.

With regard to the trial court's designation of specific visitation, Husband contends in issue 9 that the award of custody and the trial court's order with regard to visitation are "injunctions on [his] parental rights." In *Edwards v. Edwards,* 501 S.W.2d 283, 291 (Tenn. Ct. App.1973), the Court stated: "[T]he details of custody of and visitation with children are peculiarly within the broad discretion of the Trial Judge whose decisions are rarely disturbed." *See also Whitaker,* 957 S.W. 2d at 838; *and* T.C.A. § 36-6-301 (2000).

The visitation granted by the trial court appears appropriate. However, during oral argument, this Court was made aware that there has been a change in William's school schedule. William is now on a traditional school schedule with nine months of schooling followed by three months

summer vacation. Therefore, on remand, the matter should be presented to the trial court for consideration.

In Issue 11, Husband questions the trial court's division of his retirement benefits. The trial court ordered that Wife was entitled to one half of Husband's retirement benefits, specifying that the amount accrued from December 1, 1990 through November 16, 1999 shall be divided equally. In an order denying a new trial and modifying the final decree of divorce, the trial court provided that the division of the retirement benefits applied to the value accrued beginning on December 28, 1990 and ending on November 16, 1999, thereby correcting the original dates given in the final decree. In *Umstot v. Umstot* 968 S.W.2d 819,(Tenn.Ct.App. 1997) this Court stated:

> Marital property includes retirement benefits, both vested and unvested, that accrue during the marriage. *Cohen v. Cohen*, 937 S.W.2d 823, 830 (Tenn.1996). An interest in a retirement benefit plan is marital property subject to division under T.C.A. § 36-4-121(a)(1) (1996). *Cohen,* 937 S.W.2d at 830.

*Umstot* 968 S.W.2d at 822. Accordingly, Wife is entitled to an equitable division of Husband's retirement benefits. The parties were married on December 28, 1990, and the divorce hearing was held on November 16, 1999. Pursuant to T.C.A. § 36-4-121-(1)(A), these dates are appropriate for the determination of marital property. Accordingly, we find that the trial court did not err in its division of Husband's retirement account.

In Issue 12, Husband questions the award of attorney fees. Pursuant to the authority of T.C.A. § 36-5-103(c) (2000 Supp.), reasonable attorney's fees may be awarded:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred ... in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

*See also D v. K,* 917 S.W.2d 682, 686 (Tenn. Ct. App. 1995) (citing *Deas v. Deas,* 774 S.W.2d 167, 170 (Tenn.1989) ("There is no absolute right to such fees, but their award in custody ... proceedings is familiar and almost commonplace.")) We believe that the trial court's award to Wife of approximately one-half of her attorney's fees in the amount of $3,500 is appropriate.

In Issue 13, Husband contends that the trial court abused judicial discretion in refusing to hear arguments on marital property at a hearing for a motion for retrial. Husband asserts that he used

$10,500 of his non-marital property to purchase the marital home and that there was marital debt besides the home of $7,000.00 in total. No evidence was presented in support of Husband's contentions. However, the record does support the trial court's statement that the parties had stipulated that each party shall be entitled to keep the personal property in their possession, with the exception of a couch and some CD's that were in the marital home and should be awarded to Wife. The trial court also stated that the parties had stipulated that each shall be responsible for their own debt. According to the record, the only property issue left unresolved at the time of trial was the marital home. The trial court ordered that the home be sold for not less than $125,000.00, an amount determined by what Wife thought the market would bear, and that proceeds be equally divided between the parties. The trial court further ordered that in the event that the house did not sell within one year at an amount not less than $125,000.00, Husband was to receive full ownership of the house. In the order denying a new trial and modifying the final decree of divorce, the trial court did modify the final decree with regard to debt making Wife responsible for reimbursing Husband for 25% of his travel expenses incurred in exercising his visitation. We find the property division and the division of debt to be equitable and in accordance with T.C.A. § 36-4-121. Therefore, we affirm the trial court with regard to its division of property and debt and in its refusal to further pursue these issues.

Finally, Husband contends that the trial court erred in not granting a retrial. Husband contends that because the visitation awarded by the trial court does not support his relationship with his son, and because the trial court did not specifically address Christmas Day and Eve in the order of visitation, a retrial should be ordered. In addition, Husband contends that the trial court erred in not ordering Wife to be responsible for 50% of his travel expenses incurred in exercising visitation. We disagree. This cause of action was fully and fairly tried in the chancery court, resulting in an equitable judgment. We find no error in the record which warrants the reversal of the trial court's judgment, *see* ***Lanford v. York*** 457 S.W.2d 525, 224 Tenn. 503, (Tenn. 1970), nor do we find that the judgment is contrary to the weight of the evidence. Accordingly, we affirm the trial court's denial of Husband's motion for a retrial.

The final decree of the trial court is affirmed. The case is remanded to the trial court for further proceedings necessary consistent with this opinion. Costs of this appeal are assessed against Appellant, Daniel Mark Lee and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.