IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 7, 2004 Session

# BRENDI KAPLAN (formerly BUGALLA) v. JOHN A. BUGALLA

Appeal from the Chancery Court for Williamson County
No. 28272     Donald P. Harris, Chancellor

No. M2003-01012-COA-R3-CV **- Filed October 6, 2004**

This case involves a petition to modify child support.  By court approved Marital Dissolution Agreement executed May 10, 2002, child support payable by the father was set at $4,000 per month. At the time of the agreement and divorce decree father was earning in excess of $20,000 per month. The parties did not appeal the May 10, 2002 judgment, but on September 4, 2002 the mother filed a petition to increase child support in order to accommodate attendance of the two children to private school.  The trial judge denied the petition.  We affirm the action of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

James Glasgow Martin and Gregory Dye Smith, Nashville, Tennessee, for the appellant, Brenda Bugalla Kaplan.

David William Garrett, Nashville, Tennessee, for the appellee, John A. Bugalla.

## OPINION

Prior to their divorce on May 10, 2002, both Brendi K. Bugalla (Kaplan) and John A. Bugalla were successful in their respective professions and had accumulated rather extensive property holdings.  At the time of the divorce father was earning in excess of $20,000 per month and mother had $87,000 in annual earnings.

We are hampered in our consideration of this appeal in the fact that neither the final judgment of Judge Heldman entered May 10, 2002, nor the apparently extensive Marital Dissolution Agreement executed by the parties and incorporated within that judgment is preserved for appellate review.  These documents were neither filed as exhibits to the pleadings nor made exhibits in the

trial court. The abbreviated transcript of the May 10, 2002 hearing before Judge Heldman is filed as an exhibit in the trial court but discloses only a hearing wherein Mrs. Bugalla was represented by Mr. Martin and Mr. Bugalla was represented by Ms. Russell with only Mrs. Bugalla testifying. Her testimony consists of four questions limited to her desire to get a divorce on irreconcilable differences and her acknowledgment that the Marital Dissolution Agreement and its parenting plan should be approved and incorporated in the Final Decree. Beyond the brief examination of Mrs. Bugalla, the only thing of significance disclosed by the transcript is the statement by Mr. Martin:

> Mrs. Bugalla is a lawyer with Boult, Cummings, Conners & Berry, and it - - she may very well move to Chicago. She doesn't have a job in Chicago, and doesn't have a firm to go to at this point in time. So that's the reason for the six months of alimony. Right now she's making $87,500 [per] year. So if she gets a job, then that will impact her decision to move. If she doesn't get a job, she may end up staying here.

The record discloses that at the time of the May 10, 2002 divorce hearing, both of the children were attending private school in Nashville. At that time Mr. Bugalla was earning between $279,000 per year and $350,000 per year. Mrs. Bugalla further acknowledged that at the time of the hearing on her petition to increase support Mr. Bugalla was earning about the same income as he had earned at the time of the divorce. The $4,000 per month child support provided for by the MDA exceeds by $800 per month the minimum support under the guidelines for an income of $10,000 (32% of $10,000 = $3,200.)

1.      The burden of proof. *Huntley v. Huntley and Ch.*, 447 of the Public Acts of 2001.

At the time of the divorce, as well as at the present time, Tennessee Code Annotated section 36-5-101(e)(1)(B) provided:

> Notwithstanding any provision of this section or any other law or rule to the contrary, if the net income of the obligor exceeds ten thousand dollars ($10,000) per month, then the custodial parent must prove by a preponderance of the evidence that child support in excess of the amount, [calculated by multiplying the appropriate percentage set forth in the child support guidelines by a net income of ten thousand dollars ($10,000) per month], is reasonably necessary to provide for the needs of the minor child or children of the parties. In making its determination, the court shall consider all available income of the obligor, as required by this chapter, and shall make a written finding that child support in excess of the amount so calculated is or is not reasonably necessary to provide for the needs of the minor child or children of the parties.

Tenn. Code Ann. § 36-5-101(e)(1)(B).

The record gives no indication as to why Mrs. Bugalla, despite her knowledge that Mr. Bugalla was earning in excess of $20,000 per month prior to May 10, 2002, agreed to the $4,000 per month limitation on his child support obligation rather than carry her burden of proof under the statute in order to reach the excess. Nonetheless the agreement to the support thus limited exists.

In 1994 the General Assembly amended Tennessee Code Annotated section 36-5-101(a)(1) to provide:

> In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines . . . between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed.
> 1994 Tenn.Pub.Acts Ch. 987 sec. 2(b).[1]

This undisputed factual background brings this case into sharp contrast with *Barnett v. Barnett*, 27 S.W.3d 904 (Tenn. 2000); *Earthman v. McRae*, 2003 WL 1860527 (Tenn.Ct.App. April 1, 2003); *Emerson v. Emerson*, 2002 WL 31106426 (Tenn.Ct.App. Sept. 23, 2002) and *Weissfeld v. Weissfeld*, 2001 WL 569096 (Tenn.Ct.App. May 29, 2001).

In *Barnett*, the 1986 divorce decree provided child support of $2,167 per month. The hearing on the petition to modify filed in March of 1996 showed Dr. Barnett's gross income to be $209,206 annually justifying an increase to $3,700 per month. Although the trial court ordered educational expenses to be paid from that amount, the net effect of the appeal was to add the "extraordinary educational expense" of private school tuition to the court's award. Clearly there was a "significant variance" between Dr. Barnett's income at the time of the divorce and his income at the time of the modification. *Barnett*, 27 S.W.3d 904. No such "significant variance" appears in the case at bar. The guidelines provide: "For the purposes of defining a significant variance between the guideline amount and the current support order pursuant to T.C.A. 36-5-101, a significant variance shall be at least 15% if the current support is one hundred dollars ($100.00) or greater per month..." Tenn. Comp. R. & Regs rule 1240-2-4-.02(3).

*Earthman* involved a divorced mother's obligation to assist with private school tuition at a time when she was earning $49,000 per year. Income in excess of $10,000 per month was not involved. *Earthman v. McRae*, 2003 WL 1860527.

---

[1] The preceding sentence in T.C.A. 36-5-101(a)(1) to which this language was added provided that: "On application of either party for spousal support, the court may decree an increase or decrease of such allowance only upon a showing of substantial and material change of circumstances." This court drew the logical conclusion in *Turner v. Turner*, 919 S.W.2d 340 at 342-343 (Tenn.Ct.App. 1995) that the "significant variance" test had supplanted the "substantial and material change of circumstances" test when modification of existing child support orders are in issue.

In *Emerson*, an MDA had been entered into in 1990 providing the husband's support obligation to be $1,200 per month for two children with the husband assuming responsibility for the children's college education. The complaint to modify was filed by the mother in October of 2000 at a time when the father's income had dramatically increased to more than $200,000 annually. A "significant variance" had obviously occurred. *Emerson v. Emerson*, 2002 WL 31106426.

*Weissfeld* involved an original contested divorce action wherein the father's gross monthly income exceeded $17,000. The appellate court opinion makes no mention of either Tennessee Code Annotated section 36-5-101(e)(1)(B) or rule 1240-2-4-.04(3), though the case obviously involved obligor parent income in excess of $10,000 per month. *Weissfeld v. Weissfeld*, 2001 WL 569096.

The particular facts of this case make critical the issue of upon whom the burden of proof rested on May 10, 2002 to address the income of Mr. Bugalla that exceeded $10,000. Both Tennessee Code Annotated section 36-5-101(e)(1)(B) and rule 1240-2-4-.04(3) were in effect on May 10, 2002 and directly contradict each other as to who bears the burden of proof as to the availability of income in excess of $10,000 per month for child support purposes. The rule provides:

> The court must consider all net income of the obligor as defined according to 1240-2-4-.03 of this rule. The court must order child support based upon the appropriate percentage to the custodial parent up to a net $10,000 per month of the obligor's income. When the net income of the obligor exceeds $10,000 per month, the court may consider a downward deviation from the guidelines if the obligor demonstrates that the percentage applied to the excess of the net income above $10,000 a month exceeds a reasonable amount of child support based upon the best interest of the child and the circumstances of the parties. The court may require that sums paid above the percentage applied to the net income above $10,000 be placed in an educational or other trust fund for the benefit of the child.

Tenn. Comp. R. & Regs. rule 1240-2-4-.04(3). This provision of the rule was adopted by an amendment effective October 5, 1997.

The history of Tennessee Code Annotated section 36-5-101(e)(1)(B) is interesting and enlightening. Prior to the enactment of section 20 of Chapter 447 of the Public Acts of 2001, effective July 18, 2001, the statutes did not address income in excess of $10,000 and it was clear that such income was subject to the provisions of rule 1240-2-4-.04(3), including the provision therein that the burden of proof was on the obligor to establish why his income above $10,000 should not be subject to support percentages under the guidelines. On June 14, 2001, this court issued its opinion in *Huntley v. Huntley*, 61 S.W.3d 329 (Tenn.Ct.App. 2001) specifically holding that, based upon this provision of the guidelines, the burden of proof rests upon the obligor to establish a basis for a downward deviation from the guidelines as to income in excess of $10,000. *Huntley*, 61 S.W.3d at 337.

Less than one month later the General Assembly, on July 12, 2001, enacted Chapter 447 of the Public Acts of 2001, which contained extensive amendments to Title 36 of Tennessee Code Annotated, with section 20 thereof inserting into Tennessee Code Annotated section 36-5-101 the language which now appears as Tennessee Code Annotated section 36-5-101(e)(1)(B), and which leaves little doubt as to the legislative purpose.

> SECTION 20.  Tennessee Code Annotated, section 36-5-101(e)(1), is amended designating the current language as item '(A)' by adding the following new language, to be designated as item '(B)':
> (B) Notwithstanding any provision of this section or any other law or rule to the contrary, ...

2001 Pub. Acts Ch. 447 sec. 20.

By its terms the effective date of section 20 of Chapter 447 of the Public Acts of 2001 is July 18, 2001, though other amendments within that Chapter are specifically made effective only on July 1, 2002.  It cannot be seriously questioned that the effect of this 2001 Act of the General Assembly is to reverse the burden of proof as to income in excess of $10,000 per month and place upon the custodial parent, rather than the obligor, the burden of proving by a preponderance of the evidence that child support in excess of the amount calculated under the guidelines on $10,000 is reasonably necessary to provide for the minor children of the parties.

While the Child Support Guidelines have the force of law, the provisions of Rule 1240-2-2-.04(3) cannot prevail in the face of a subsequent act of the General Assembly directly invalidating it.  Where two acts conflict and cannot be reconciled the prior act will be repealed or amended by implication to the extent of the inconsistency between them.  *State Dep't of Revenue v. Moore*, 722 S.W.2d 367 at 374 (Tenn. 1986).[2]

Tennessee Code Annotated section 36-5-101(e)(1)(B), having been in full force and effect on May 10, 2002, and Mrs. Bugalla having made no attempt to carry her burden of proof that the amount of child support calculated on $10,000 per month is inadequate or that, an amount in excess thereof ". . . is reasonably necessary to provide for the needs of the minor child or children of the parties," it necessarily follows that before she can succeed in altering the child support provided in the Marital Dissolution Agreement she must establish, that there has been a "significant variance" between the amount of child support established under the guidelines on May 10, 2002 and the amount that should be established as of February 3, 2003.

---

[2] Recognizing the effect of Chapter 447 of the Public Acts of 2001, rule 1240-2-4-.04(3) was changed to conform to the statute by amendment filed September 29, 2003 and effective December 13, 2003.  The statute being in effect at the time of both the May 10, 2002 hearing and the February 3, 2003 hearing the subsequent alteration of the rule to conform to the statute is not significant in this case.

It is obvious that if, as the guidelines suggest, income in excess of $10,000 per month is to be used in such calculations, $4,000 per month is no more inadequate on February 3, 2003 than it was on May 10, 2002. It is equally evident, however, that $4,000 per month exceeds the Child Support Guidelines amount when calculated on the basis of $10,000 per month. We are thus faced with a situation in which there has been no change of income for Mr. Bugalla since the May 10, 2002 judgment and no effort by Mrs. Bugalla to carry her burden of proof under Tennessee Code Annotated section 36-5-101(e)(1)(B) that income of Mr. Bugalla in excess of $10,000 per month "is reasonably necessary to provide for the needs" of the children. When the Child Support Guidelines are coupled with the mandatory provisions of Tennessee Code Annotated section 36-5-101(e)(1)(B) the $4,000 per month in child support is, and was, on both May 10, 2002 and February 3, 2003, in excess of the guideline amounts. Although this conclusion may be inconsistent with the spirit of the law predating Chapter 447 of the Public Acts of 2001, section 20 of that Act will admit of no other reasonable construction. The court is not at liberty to disregard legislative mandates because a court may determine such enactments to be ill advised or even unreasonable.

> Moreover, the Court, under the guise of a liberal construction, can not so minimize the plain provisions of a statute as to practically destroy their efficient operation, and so say that the Legislature did not intend that its command should be obeyed; and for a stronger reason this is true, when the requirement is that a particular thing be done, and when this requirement is a new graft upon an old system, and one of the most strongly marked of all the new features introduced. It is the duty of the Court to enforce this law as it is found upon the statute-book; and, if it be good law, its beneficent results will more clearly appear; if it be a bad one, its character will be the sooner manifest, and relief can be craved of that body whose duty it is to make new laws and to mend old ones.

*Scheibler v. Mundinger*, 86 Tenn. 674, 693 (Tenn. 1888).

> A present day reiteration of this time-honored rule is equally unimpeachable.

> Finally, it is not for the courts to alter or amend a statute. *See Town of Mount Carmel v. City of Kingsport*, 217 Tenn. 298, 306, 397 S.W.2d 379, 382 (1965);*see also Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 453 (Tenn. 1995); *Manahan v. State*, 188 Tenn. 394, 397, 219 S.W.2d 900, 901 (1949). Moreover, a court must not question the "reasonableness of [a] statute or substitut[e] [its] own policy judgments for those of the legislature." *BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn.Ct.App. 1997). Instead, courts must "presume that the legislature says in a statute what it means and means in a statute what it says there." *Id.* Accordingly, courts must construe a statute as it is written. *See Jackson v. Jackson*, 186 Tenn. 337, 342, 210 S.W.2d 332, 334 (1948).

*Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 803 (Tenn. 2000).

2.  The proof offered on February 3, 2003.

Even if it could be said that the petition of September 4, 2002, filed less than four months after the final judgment of May 10, 2002, could provide a vehicle for reopening the proof and allow Mrs. Bugalla another opportunity to carry her burden of proof under Tennessee Code Annotated section 36-5-101(e)(1)(B) no proof was offered at the February 4, 2003 hearing that addressed itself to the issue of whether or not support in excess of the amount calculated on $10,000 per month is reasonably necessary to provide for the needs of the minor children.

The last sentence of subsection (e)(1)(B) provides: "In making its determination, the court shall consider all available income of the obligor, as required by this chapter, and shall make a written finding that child support in excess of the amount so calculated is or is not reasonably necessary to provide for the needs of the minor child or children of the parties."  Tenn.CodeAnn. § 36-5-101(e)(1).

Since the divorce decree entered as a result of the May 10, 2002 hearing is not in the record before us, we have no means of determining whether or not Judge Heldman made such written findings in that order.  While it is only logical to assume that he did not make such findings, given the very limited hearing held May 10, 2002, we cannot presume that the logical result in fact occurred.  The obligation rests upon an appellant to preserve an appellate record that allows this court to review the trial court's actions.  *See* Tenn.R.App.P. 24(b); *State v. Bennett*, 798 S.W.2d 783, 789 (Tenn.Ct.Crim.App. 1990); *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn.Ct.App. 1992).

In this case we are confronted with a situation analogous to *Lee v. Lee*, 66 S.W.3d 837 (Tenn.Ct.App. 2001).  In that divorce case, the Court of Appeals was considering a custody issue which in normal circumstances would be governed by Tennessee Rule of Appellate Procedure rule 13(d).  The trial court, however, made no findings of fact and the court of appeals held:

> Since this case was tried by the trial court sitting without a jury, Tennessee law requires that we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court.  Unless the evidence preponderates against the findings, we must affirm, absent error of law.  Tenn.R.App.P. 13(d).  However, in this case, the trial court made no findings of fact.  The final decree of divorce states what the parties have stipulated and simply concludes, without explanation, that Wife is entitled to custody of the minor child.  Within Appellee's brief is a section entitled "ruling of the court" containing a transcript of proceedings dated November 16, 1999, the same date as that of the trial transcript contained in the record; however, the transcript of the rulings from the bench are not included in the record.  Pursuant to Tenn.R.App.P. 13(c), we are limited to the facts "established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to rule 14."

There was nothing found as a fact to which we may attach the presumption
of correctness. Therefore, we will review the record *de novo* to determine where the
preponderance of the evidence lies. *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn.
1999) (citing *Devorak v. Patterson*, 907 S.W.2d 815, 818 (Tenn.Ct.App. 1995);
*Goodman v. Memphis Park Comm'n*, 851 S.W.2d 165, 166 (Tenn.Ct.App. 19092);
and *Kelly v. Kelly*, 679 S.W.2d 458, 460 (Tenn.Ct.App. 1984)).

*Lee v. Lee*, 66 S.W.3d 837, 842-843 (Tenn.Ct.App. 2001).

As to both the May 10, 2002 hearing and the February 3, 2003 hearing, we are left with
something of a dilemma. The last sentence of the statute requires the trial court to make findings.
The transcripts of the May 10, 2002 abbreviated hearing and of the February 3, 2003 extensive
hearing are before the court and neither of the transcripts discloses any effort by Mrs. Bugalla to
carry the burden of proof resting upon her under the specific provisions of section (B). If the trial
court, after either hearing, made a finding adverse to Mr. Bugalla on this issue not only would the
evidence preponderate against the findings but indeed no evidence would support such a finding.

3. Attorneys' fees.

Mrs. Bugalla takes issue with the decision of Judge Harris to award her only a portion of her
attorneys fees incurred in prosecuting a contempt petition against Mr. Bugalla. At the same time Mr.
Bugalla asserts that he is entitled to reasonable attorneys fees on appeal. We have considered the
record before the trial court as it relates to the contempt petition. The award of attorneys fees lies
within the sound discretion of the trial court and will not be disturbed on appeal unless the parties
can show an abuse of that discretion, which, in this case, does not exist. *Lyon v. Lyon*, 765 S.W.2d
759, 763 (Tenn.Ct.App. 1998). While this court has authority to award attorneys fees for services
on an appeal, *Seaton v. Seaton*, 516 S.W.2d 91 (Tenn. 1974), we decline to do so based on the
particular circumstances in this case.

4. Conclusion.

When the record in this case under T.R.A.P. rule 24(a) and (b) are considered under the
mandate of Tennessee Code Annotated section 36-5-101(e)(1)(B)(Supp. 2003) we are compelled to
affirm the trial court on the basis that Mrs. Bugalla did not carry her burden of proof under the
statute. We further find that the trial court did not abuse its' discretion in declining to award the full
amount of attorneys' fees to Mrs. Bugalla as to the contempt petition. We further find that Mr.
Bugalla is not entitled to attorneys' fees on appeal. The judgment of the trial court is affirmed for
the reasons herein stated and the cause is remanded for such further proceedings as may be
necessary. Costs of the cause are assessed against Mrs. Bugalla.

_____
WILLIAM B. CAIN, JUDGE