IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 22, 2004

## BERTA MARGARITA DE LOS RIOS LEE v. DANIEL LEE

**Appeal from the Chancery Court for Shelby County**
**No. D-27933-III     D. J. Alissandratos, Chancellor**

_____

**No. W2003-01053-COA-R3-CV - Filed December 29, 2004**

_____

As part of a divorce, the trial court granted custody of the parties' child to the mother, with visitation by the father. The father appealed, and this court affirmed the trial court. The father subsequently filed a petition to change custody. After lengthy proceedings brought on by various filings by the parties, the trial court ruled that it no longer had jurisdiction over the child's custody. We affirm the jurisdictional ruling, making all other issues moot.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Daniel M. Lee, Collierville, Tennessee, Pro Se.

Lee Ann Pafford Dobson, Germantown, Tennessee, for the appellee, Berta Margarita De Los Rios Lee.

Paul G. Summers, Attorney General and Reporter; Pamela A. Hayden-Wood, Senior Counsel, In Defense of Tenn. Code Ann. § 36-6-101(a)(1).

### OPINION

Berta Margarita de Los Rios Lee and Daniel Mark Lee were married in Torrance, California in 1990. They moved to the Memphis area in 1993 when Mr. Lee, an employee of Federal Express, voluntarily transferred there. The parties' only child, William Alvaro Lee, was born in this state in 1994. The marriage relationship deteriorated, and in September of 1996, the wife returned to California with the child. In December of the same year, she filed a Complaint for Divorce in the Shelby County Chancery Court and asked the court to grant her custody of William. The husband filed an Answer and Counter-Complaint for Divorce and also asked for custody of William.

During the pendency of the divorce action the trial court entered a consent order allowing Mr. Lee two weeks of visitation with William every month. His periods of visitation were marked by apparent confusion on his part over their duration and by continuing conflicts over the boundaries of each parent's authority. The difficulties the parties experienced with visitation during this period are more fully recounted in *Lee v. Lee*, 66 S.W.3d 837 (Tenn. Ct. App. 2001).

The parties ultimately stipulated to the grant of an absolute divorce pursuant to Tenn. Code Ann. § 36-4-129(b). The trial court conducted a bench trial to determine the question of custody and some undecided property issues, and subsequently entered a Final Decree of Divorce and granted custody of William to his mother. Mr. Lee was granted visitation every other weekend and additional visitation during Christmas and school vacations. On appeal, this court affirmed the trial court's custody and visitation arrangement.[1] *See Lee v. Lee*, *supra*. The decisions rendered by the trial court and by this court did not signal an end to the parties' struggles over visitation or custody.

## I. TRIAL PROCEEDINGS AND ISSUES ON APPEAL

The proceedings that are the subject of this appeal began with the filing on November 19, 2001, by Mr. Lee of a Petition for Contempt[2] and to Change Custody. As he had in prior proceedings, Mr. Lee appeared *pro se*. The petition alleged that there had been a material change of circumstances and that Ms. Lee had tried to minimize or negate his relationship with William, to the detriment of the child. The mother's response denied the father's allegations and claimed that he had abused his visitation privileges in violation of specific provisions in the Final Decree and should himself be held in contempt.

In an unusual legal strategy, Mr. Lee's petition asking the court to change custody and find the mother in contempt for violating the prior custody and visitation order began with a challenge to the court's jurisdiction. That challenge was based on alleged constitutional infirmities in Tenn. Code Ann. § 36-6-601(a)(1), the statute authorizing courts to award custody.[3] The same or similar constitutional arguments would be raised by Mr. Lee with regard to almost every issue that arose.

Mr. Lee's choice of litigation strategy was unsuccessful and even counterproductive, for not only did he fail to achieve a change of custody, but his visitation rights were suspended and he was unable to get them restored. We have read all the transcripts of proceedings in the record (six in all),

---

[1] While we found the trial court's award of visitation to be appropriate, we noted that a change had been subsequently made in William's school schedule which could affect visitation. We accordingly directed the trial court to consider that change on remand.

[2] Some of the contempt allegations related to disposition of real property in accordance with the divorce decree and are unrelated to custody and visitation issues.

[3] The Attorney General was notified, as is required pursuant to Tenn. R. Civ. P. 24.04, and intervened.

as well as reviewing all the filings.[4] Although we have determined that only the jurisdictional issue need be resolved in this appeal, we will briefly discuss the more significant proceedings in the trial court to give a better understanding of the context of the rulings. The parties filed many, or as the trial court once observed, "innumerable," motions, and throughout a series of hearings, the trial court attempted to deal with those motions in an orderly fashion based on the parties' setting them for hearing and in recognition of the interdependence of some of them.

Along with her answer and counterclaim the mother filed a motion for a psychological examination of Mr. Lee under Tenn. R. Civ. P. 35. She contended that the father's mental condition was in controversy because he had allowed his son to view inappropriate violent material and had inflicted emotional abuse upon him during visitation. She alleged the examination was necessary due to concerns about the father's fitness for unsupervised visitation.

The father filed a response to the motion in which he stated that the court had already issued such an order on January 24, 2001, so a new order was not necessary, even though he had not yet complied.[5] He also re-asserted constitutional challenges to the statute authorizing courts to make custody awards. The trial court conducted a hearing and granted the mother's motion, expressing its own concerns based on its observations. The court determined that the father's psychological status had to be determined not only for the purpose of custody and visitation, but also for the question of whether he was competent to proceed in the litigation. The court stated that "the threshold at issue in any litigation is first and foremost the competence of someone to be able to proceed." The detailed order filed by the court included a strict schedule for the father to submit to an evaluation by the professional named by the mother.

Six months later, the mother filed an "Emergency Petition to Terminate Visitation or, in the Alternative, Supervised Visitation." The Petition noted that the results of the ordered psychological examination had not yet been tendered to the court[6] and alleged that the father had engaged in a variety of abusive behaviors against the child during visitation. In later appearances, the father denied those allegations.

The original Complaint for Divorce had been brought in the court of Chancellor D.J. Alissandratos, and he had presided over the case since that time. But he was off the bench on the

---

[4]We note that the mother was not present at any of those hearings, although she was represented by counsel. The father was *pro se*, and was not called as a witness. The hearings focused almost exclusively on arguments on legal issues or procedural motions.

[5]The transcript of the hearing of January 23, 2002, also indicates that the trial court had orally granted a similar motion in January of 2001, but through an oversight the court's written order had omitted that ruling. Our record includes no filings prior to Mr. Lee's petition.

[6]Although the had father finally submitted to the psychological examination, he did not pay the psychologist as ordered by the trial court, and the psychologist had not released the report.

day the mother's Emergency Petition was filed. The Petition was therefore heard *ex parte* by Chancellor Walter Evans. On June 21, 2002, he issued an order enjoining Mr. Lee from exercising visitation with his child, "until further orders of this court to the contrary" and set a hearing for a date one month later on July 22.

Mr. Lee filed a Motion to Reconsider and to Restart Visitation (the first of several motions seeking this relief), and Ms. Lee filed a motion to re-appoint CASA to investigate her allegations[7] or, in the alternative, to appoint a Guardian ad Litem for the same purpose and to represent the interests of the child. The father filed a response in which he asked that a CASA investigation be performed with the mother to bear the cost and that no Guardian ad Litem be appointed.

At a hearing on some of the various pending motions on July 19, the father attempted to have the emergency order lifted, but the trial court decided to hold all matters in abeyance until receipt of the report of the psychologist who had been appointed to evaluate Mr. Lee. By the time of the next hearing, October 4, 2002, the chancellor had finally obtained access to the psychologist's report. On the basis of the report, he found the father to be competent to proceed with the litigation unassisted.[8]

The chancellor considered a number of motions during the same hearing, including the father's motion to recuse, which was denied, and his motion for sanctions against the mother for requesting the psychological examination, which was likewise denied. At this hearing, the father tried to raise the question of visitation, but the court stated it would not rule on that or other pending

---

[7]CASA had apparently done two home studies during the initial divorce proceedings.

[8]The chancellor quoted the report during the hearing as saying that the personality test "produced significant elevations on set scale six indicating problems with suspiciousness, sensitivity to criticism, extreme mistrust of others and a sense of persecution. This elevation was significantly related to questions which artificially elevate the score due to his current involvement in the legal process." The court went on to say that "Mr. Lee has become deeply involved in the various legal subjects which may at times obscure the real issues involving his son." The psychological report itself is not in the appellate record. The transcript of the record indicates that Mr. Lee never moved the trial court to have the psychological report from the Rule 35 mental examination entered into evidence. He has filed a motion in this court to supplement the record with that report. Under Tenn. R. App. P. 24(e), such a motion should be submitted to and settled by the trial court, whose determination is conclusive unless there are extraordinary circumstances. Mr. Lee's motion in this court does not suggest that he filed a motion in the trial court to supplement the record. Instead, it recites only that he asked the trial court clerk to put the report in the record, and that he asked the appellee's counsel if she would agree to the supplementation. We note that under Tenn. R. App. P. 24(g) no court may add or subtract from the record "except insofar as may be necessary to convey a fair, accurate and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal." Mr. Lee is not challenging the accuracy of the findings in the report nor the trial court's explicit adoption of those findings. Further, the inclusion of the report in the appellate record is not necessary to resolve this appeal. The motion is accordingly denied.

issues regarding the custody arrangement until a Guardian ad Litem had been appointed and filed a report.  The court ordered the appointment of a Guardian ad Litem for the child.[9]

The court also discussed, but did not rule on, the jurisdictional issue which had been raised earlier.  The court observed that it continued to be concerned about its jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, but agreed that other issues had required resolution before it could proceed with that question.  The trial court wanted to hear from the Guardian as Litem on the jurisdiction issue so that the child's interest was represented.

The report of the Guardian ad Litem was submitted to the court during the hearing of January 17, 2003.  The report stated that California had long been William's home state and that it was in the child's best interest that matters of custody, visitation, and child support be heard in the courts of that State.  The court found it no longer had jurisdiction over custody.[10]

At the end of this final hearing, not in response to any request, Mr. Lee asked to strike his motion to restart visitation, and the court agreed since "it becomes moot.  It becomes one for California."

An order memorializing the court's decision was entered on March 27, 2003, entitled "Order on Transfer of Jurisdiction as to Custody and Child Support Issues Pertaining to Minor Child."  In it, the court held that the Tennessee court did not have continuing jurisdiction over custody and visitation decisions involving the child.  It also found that, although it had discretion to retain authority over the issues relating to child support, those matters should also be transferred to California.[11]  This appeal followed.

At first view, based on Mr. Lee's brief and the record of multiple motions and hearings, it would appear that this appeal is complex and involves a number of issues.  However, a thorough and more in-depth examination reveals that there is one dispositive issue: whether the trial court correctly decided that it no longer had jurisdiction over issues regarding the custody of the parties' child.

---

[9] The father objected at the outset to the appointment of a Guardian ad Litem. In  later filings and hearings, he asserted that because of the chancellor's alleged bias against him, any such appointment by the court would inevitably lead to an unfavorable result for him and insisted that he himself should be allowed to choose the Guardian ad Litem. He also made an argument that because the order appointing her refers to the Guardian ad Litem as "the guardian of the person" of the child, it was an unconstitutional infringement upon his rights as a parent.

[10] The court also declared that it would retain jurisdiction over the  disputes related to the distribution of marital property in accordance with the divorce decree, specifically disposition of real property in Tennessee and the contempt allegations related thereto.

[11] In discussing the timing for relieving the Guardian ad Litem of his responsibilities, the court recognized that a final judgment would be issued later, presumably on the property distribution and related contempt issues the court retained.  Although we cannot locate that judgment in the record, Mr. Lee does not challenge the court's decisions as to those issues.  No one has raised any finality issues, and it is clear a final order was entered.

Mr. Lee has raised twelve issues in his brief. Most of them relate to rulings made during the course of the proceedings below and most assert an abuse of discretion in these rulings.[12] Many of them would be nonjusticiable, or moot, regardless of our disposition of the jurisdiction issue, because this court can provide no remedy at this stage.[13] The rest are pretermitted by our decision on jurisdiction, but we feel compelled to address visitation to clarify its status in light of the trial court's ruling and our affirmance of that jurisdictional ruling.

---

[12]Mr. Lee's appellate brief states the issues as follows:

1. With no proof showing it was needed, was a citizen being ordered to undergo a Rule 35 mental examination, under threat of being taken by force, an abuse of discretion?

2. On the first day of summer visitation between a boy and his dad, with no proof given, was the granting of an *ex parte* petition to terminate all visitation, an abuse of discretion?

3. Was the refusal to rule on a motion to restart visitation an abuse of discretion?

4. Was a refusal to recuse due to bias, an abuse of discretion?

5. When father was ruled "truly competent" from the mental examination, was the refusal to grant sanctions, an abuse of discretion?

6. Three and a half months after visitation was stopped, with all proof showing the mother filed false information with the court, was the refusal to grant a second motion to restart visitation, an abuse of discretion?

7. With strict scrutiny as the level of constitutional review, was the refusal to restart visitation, a violation of fundamental rights under the Tennessee and United States Constitutions?

8. With no finding of parental abuse or neglect, were the forced appointment of a Guardian *ad Litem* (an attorney) to be the child's "guardian of the person" and to purportedly represent the interests of the child even against one or both fit parents, and the trial judge's statement that the child is a "ward of the court," abuses of discretion and constitutional law?

9. Is the statute that purports to grant courts jurisdiction over children of divorced parents T.C.A. § 36-6-101(a)(1), which the attorney general has not said is constitutional, unconstitutional under the Tennessee and United States Constitutions?

10. Was the reopening of a res judicata order, to allow mother to take the child out of the country, an abuse of discretion?

11. After 14 months of litigation where the mother requested and trial judge issued numerous modifications to custody and other orders, was the trial judge's purported withdrawal under the Uniform Child Custody Jurisdiction and Enforcement Act prior to all matters being adjudicated and appealed as of right under Tennessee law, an abuse of discretion?

12. If any of the issues raised, briefed, and argued under Tennessee law are declined to be answered by this Court, does that allow another state to adjudicate Tennessee statutory and constitutional law in an appeal as of right?

[13]An example are Mr. Lee's objections to the order that he undergo a psychological examination. That examination has been completed; its results were not used in any way that injured Mr. Lee's position; and he wants to include it in the appellate record.

## II. JURISDICTION

Tennessee's version of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Tenn. Code Ann. § 36-6-201 *et seq*, governs jurisdictional conflicts between Tennessee and other states over child custody.[14] As stated in the Act, one of its purposes is to "[p]romote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child." Tenn. Code Ann. § 36-6-202(2).

The home state of the child is one of the most important factors for the court to consider in determining the question of jurisdiction, and that term is defined in the statute.

> "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six (6) months of age, "home state" means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

Tenn. Code Ann. § 36-6-205(7).

Even though the child in this case was living with his mother in California in 1996 when she filed for divorce and custody, it was not his home state at the time, because he had not yet lived there for six months. The mother was correct to file in Tennessee, since it had the jurisdiction to make an initial child custody determination under Tenn. Code Ann. § 36-6-216(a)(1).

A Tennessee court making the initial custody determination generally has continuing jurisdiction over its own child custody order. However, after the child has lived in another state long enough for that state to have become the child's home state, that jurisdiction may end.

> (a) Except as otherwise provided in § 36-6-219, a court of this state which has made a child-custody determination consistent with this part has exclusive, continuing jurisdiction over the determination until:
>
>   (1) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or (2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

---

[14] The definitions portion of the Act specifically states that a "child custody determination" or a "child custody proceeding" includes determinations or proceedings involving visitation as well as child custody. Tenn. Code Ann. § 36-6-205(3) & (4).

(b) A court of this state which has made a child-custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under § 36-6-216.

Tenn. Code Ann. § 36-6-217.

Since Mr. Lee still resides in this state, determination of jurisdiction must necessarily rest upon subsection (a)(1). The first part is clearly met because William and his mother have been living in California since 1996. The other requirement is that the child no longer has a significant connection with this state and that substantial evidence is no longer available in this state concerning his care, protection, training, and personal relationships.

The parties originally married in California. The child was born in this state, but his mother took him back to California when he was two years old. The father exercised visitation in both California and Tennessee, but primarily in California. That visitation was suspended during these proceedings before the trial court ruled that it no longer had jurisdiction. The record does not contain any evidence of any current connection between the child and this state other than that his father lives here.

The type of connection and evidence meant by the statute must be considered in the context of any proceeding to modify an existing custody arrangement, which is what Mr. Lee sought when he initiated these proceedings. Once a court has established a custody or parenting arrangement, including a visitation or residential schedule for the non-custodial parent, that order can only be changed or modified if the court determines (1) there has been a material change in circumstances since the initial custody order and (2) that modification of the existing arrangement is in the child's best interests. *Cranston v. Combs*, 106 S.W.3d 641, 643-44 (Tenn. 2003); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). These determinations, of course, must be based upon evidence adduced at a hearing where both parties have the opportunity to present evidence and challenge the other party's evidence. There can be no question that virtually all of the evidence related to William's current situation, and therefore relevant to a determination of his best interests, will be provided by witnesses and records in California.

In response to Ms. Lee's emergency petition, Mr. Lee filed his own affidavit and those of two other people who, according to Mr. Lee, had knowledge of William's condition during his visits in Tennesee.[15] The purpose of these affidavits, however, was to contradict the allegations made by Ms.

_____

[15]The affidavits, which are sworn, are in the form of typed questions which Mr. Lee submitted to the affiants, and which they answered in their own handwriting. Most of the answers were only one word in length. For example, a neighbor of Mr. Lee's who lived two doors down from him and who previously provided daycare to William in her home was asked, "What if any signs of physical or mental trauma (abuse) did you note the weeks William was under your daily care." Her answer was "None" (word underlined). "Did the father and son show great care and love for each other, with the father doing things such as calling from work to check on him?" The affiant answered "yes." Her only more

(continued...)

Lee in support of her emergency petition to suspend visitation. While they may have limited relevance to the issues to be decided regarding the change of custody petition, they do not constitute substantial evidence of the child's current care, protection, training, and personal relationships.

Consequently, we conclude that the trial court no longer had continuing, exclusive jurisdiction over custody issues related to the child. Subsection (b) of Tenn. Code Ann. § 36-6-217 makes it clear that a Tennessee court that does not have continuing exclusive jurisdiction under subsection (a) has no jurisdiction to modify custody unless it has jurisdiction under Tenn. Code Ann. § 36-6-216, the provision related to initial custody determinations. Under subsection (a) of that statute, a court has jurisdiction to make an initial award only if:

> (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

> (2) A court of another state does not have jurisdiction under subdivision (a)(1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under § 36-3-221 or § 36-3-222, and . . .

> (3) All courts having jurisdiction under subdivision (a)(1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under § 36-3-221 or § 36-3-222, or

> (4) No court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (2), or (3).

At the time Mr. Lee filed his petition to change custody, Tennessee was clearly not the child's home state. There is no indication in the record that a California court has declined jurisdiction. Further, California would have jurisdiction under the UCCJEA's provisions. Consequently, the courts of Tennessee no longer had jurisdiction to decide the custody modification petition.

Mr. Lee's sole attack on the factual basis for the trial court's decision on jurisdiction was his reference to the neighbors who provided affidavits generally testifying they had seen no evidence of physical or emotional abuse during William's visits to his father's house. His only attack on the

---

[15](...continued)
extensive statement, in response to the question "any other comments?" was "I feel that the child suffers the most. My granddaughter always wants to go play at Wms. when he is there." Mr. Lee's own affidavit stated that the second affiant lived in Mr. Lee's home, and was "eager to provide testimony." His answers were also monosyllabic responses to questions posed by Mr. Lee. Neither affiant claimed to have a significant relationship with William or to have extensive knowledge of him outside his earlier visits in Tennessee.

trial court's legal analysis is his assertion that "home state" is merely a definition and has no bearing on the issue since "the 'home state' is below the hierarchy of the state with exclusive continuing jurisdiction, which is Tennessee." Our analysis of the UCCJEA's jurisdictional provisions addresses this assertion.

Mr. Lee's primary argument is that the trial court abused its discretion by dismissing his petition on jurisdictional grounds after "multiple appealable orders were issued." He asserts that the court had continuing jurisdiction when he filed his petition; that the court made several rulings during the pendency of his petition that he wants to challenge in this appeal and further, if necessary; that until those appeals are exhausted, the question of jurisdiction is not before this court or the trial court; that rulings such as the ordering of the psychological evaluation and others he considers as having Constitutional implications "created the possibility of a very lengthy appellate process, up to the U.S. Supreme Court, and precludes personal jurisdiction over the parties from being modified until the entire process is complete."

These arguments indicate a misapprehension of the requirement that subject matter jurisdiction exist and the consequences of the lack of such jurisdiction. Subject matter jurisdiction involves a court's power or authority to adjudicate a particular controversy brought before it; it relates to the cause of action itself. *State es rel. Dept. of Social Services v. Wright*, 736 S.W.2d 84, 85 n. 10 (Tenn. 1987); *First American Trust Co. v. Franklin-Murray Development Company, L.P.*, 59 S.W. 3d 135, 140 (Tenn. Ct. App. 2001). Thus, subject matter jurisdiction is an essential requirement for the granting of judicial relief both at trial and on appeal. *Id*. at 141. "The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated." *Id*. The question of whether a court has authority to modify a custody order is a matter of subject matter jurisdiction. *Gutzke v. Gutzke*, 908 S.W.2d 198, 201 (Tenn. Ct. App. 1995).

Issues of the court's fundamental authority to decide a controversy are so important that courts must address them even if the parties do not raise them. *First American Trust Co.,* 59 S.W.3d at 140. In fact, parties cannot waive the requirement of subject matter jurisdiction or agree to confer jurisdiction on the court. *Id*. at 140-41.

Courts derive their subject matter jurisdiction from the Constitution of Tennessee or from legislative act, *i.e.*, statute. *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996). Courts cannot exercise jurisdictional authority that has not been conferred on them directly or by necessary implication. *In re Estate of White*, 77 S.W.3d 765, 768 n.7(Tenn. Ct. App. 2002); *Dishmon v. Shelby State Cmty. College*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999).

In the case before us, the Tennessee General Assembly has adopted the UCCJEA, and the provisions of that act clearly set out the requirements for a Tennessee court to exercise jurisdiction over a change of custody request. Unless the statute confers jurisdiction, the court has no authority to decide the issue.

While we understand that Mr. Lee is dissatisfied with many of the interim rulings made by the trial court, and that he is frustrated with the subsequent dismissal for lack of jurisdiction after those interim rulings, the record shows that, from early on in these proceedings, the court expressed its concern over the question of jurisdiction since Tennessee had long ceased to be the child's home state. A hearing and decision on that issue, however, was postponed until the psychological report was filed and considered and then until a guardian ad litem to represent the child's interest was appointed and made a report. With both these actions, which the court considered prerequisite to a substantive ruling on jurisdiction, there was delay, at least some of which is attributable to Mr. Lee. In any event, the fact that the trial court had made some interlocutory rulings does not confer jurisdiction on it to consider the petition for change of custody. Just as the parties cannot confer jurisdiction by appearance, plea, consent, or waiver, *First American Trust*, 59 S.W.3d at 140-41, neither can the court confer jurisdiction upon itself..

We conclude that the trial court correctly found that it had lost jurisdiction over this case. Neither the trial court nor this court has the authority to modify the existing custody order.

### III. STATUS OF VISITATION

Some of the arguments propounded by Mr. Lee point out an important issue that we think must be addressed simply to clarify the legal consequence of the trial court's dismissal for lack of jurisdiction and our affirmance thereof. That issue is the status of interlocutory orders entered before the court determined that it had no jurisdiction to decide a request for custody modification.

The only one of the interlocutory orders whose post-dismissal status need be clarified is the one of most importance and the one with most significant consequence to Mr. Lee: the injunction suspending Mr. Lee's visitation.[16] While that order was in effect at the time of the dismissal on jurisdictional grounds, it was no longer in effect after the dismissal, and the original custody order, including the visitation arrangements therein, remains the controlling order on those matters, unless or until it is modified by a court with jurisdiction.

It is well-settled that a judgment or order entered without subject matter jurisdiction is void. *Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996); *First American Trust*, 59 S.W.3d at 141. Since the trial court herein did not have jurisdiction to determine the custody modification petition filed by Mr. Lee when it was filed, it is certainly arguable that it did not have jurisdiction to enter other orders regarding issues raised after the filing of the petition. However, that does not mean they were not valid for the pendency of the proceedings, but rather that they have been rendered void by the decision on jurisdiction.

---

[16]The exchange between Mr. Lee and the trial court at the end of the last hearing regarding Mr. Lee's withdrawal of his motion to restart visitation could lead to confusion. At this point, of course, we do not know whether the parties have initiated any litigation in California and what their view, or the California court's view, of the interlocutory order is. We simply felt it advisable to set forth our view.

-11-

The UCCJEA's jurisdictional sections provide that the court making an initial custody determination (the trial court herein) has continuing jurisdiction over that order until a Tennessee court makes the determinations set out in Tenn. Code Ann. § 36-6-217 that result in the loss of jurisdiction. In the case before us, that determination was not made until after the parties and the court had undergone at least six hearing on various motions and issues. The interlocutory or *pendente lite* orders ruling on those motions and issues were entered at a time when the trial court, under the language of the statute, still had continuing jurisdiction.

The visitation suspension order was, in effect, a temporary restraining order or temporary injunction pursuant to Tenn. R. Civ. P. 65.[17] Like any other injunction entered for the pendency of the litigation or any other interlocutory order, it was extinguished upon the dismissal of the action. Because the trial court did not have jurisdiction to modify the existing custody and visitation order, the restraining order did not effect a permanent modification of the original custody order. It was not intended to.

For any or all of these reasons, the order suspending visitation "pending further orders of the court" was no longer effective upon the trial court's dismissal of the action for lack of subject matter jurisdiction.

## CONCLUSION

The court's order dismissing the father's petition to change custody for lack of jurisdiction is affirmed. Costs of this appeal are taxed to the appellant, Daniel Lee.

_____
PATRICIA J. COTTRELL, J.

---

[17] A restraining order may be entered without notice. Tenn. R. Civ. P. 65.03(1). As a general rule, however, such an order "shall expire by its terms within such time after entry, not to exceed fifteen days, as the court fixes." Tenn. R. Civ. P. 65.03(5). There is an exception for domestic relations cases, and a restraining order entered in such a case "may be issued upon such terms and conditions and remain in force for such time as shall seem just and proper to the judge to whom application therefor is made. . . ." Tenn. R. Civ. P. 65.07.