**In re ESTATE OF Guy Allen WHITE.**

Court of Appeals of Tennessee,
at Nashville.

Oct. 30, 2001.

Permission to Appeal Denied by
Supreme Court April 1, 2002.

dent's conveyance to the sons was a fraudulent conveyance and, in the alternative, requested a partition sale of the property. Following a hearing, the trial court determined that it lacked appellate jurisdiction over the probate court and that the widow lacked standing to seek partition of the property because she owned no interest in it. The widow asserts on this appeal that the trial court erred by dismissing her petition to partition the property. We affirm the dismissal of the widow's fraudulent conveyance and partition claims. However, we vacate the dismissal of her appeal from the probate court and remand this claim for further proceedings in accordance with Tenn.Code Ann. § 16–4–108(a)(2) (1994).

W. Howell Forrester, Pulaski, TN, for appellant, Mable White.

Robert D. Massey, Pulaski, TN, pro se.

Bobby Allen White, Terry Lee White, James Edward White, Jeffery Lane White, Mack Dean White, and Jack Eugene White, Pulaski, TN, pro se.

## OPINION

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

This appeal involves a dispute between a widow and her six sons regarding a small tract of property her estranged husband conveyed to the sons approximately nine months before he died. The widow filed a petition in the Chancery Court for Giles County seeking appellate review of the Giles County Probate Court's orders. She also sought a declaration that the dece-

### I.

Guy Allen White and his wife, Mable White, lived in Giles County and had six sons. Mr. White owned the tract of land where the family home and his shop were located. For reasons not readily apparent in the record, the Whites decided to partition this property. Accordingly, on March 14, 1985, they executed a partition deed conveying the .60–acre tract containing the family home and a pump house to Ms. White and the remaining a .80–acre tract containing the shop building to Mr. White. On the same date, the Whites also executed a bill of sale in which Ms. White conveyed to Mr. White all her interest in the shop tools, fixtures, equipment, and machinery in the shop.[1]

The Whites became estranged as the years went by. They separated in late 1997 or early 1998, but neither of them started divorce proceedings. After the separation, Mr. White took up with Janice

---

1. This conveyance did not include the logging machinery and equipment that Mr. White owned jointly with two of his sons.

Smith. On February 4, 1998, Mr. White executed two instruments that are the targets of Ms. White's assault. First, he conveyed the .80–acre tract that had been the subject of the 1985 partition deed to his six sons. Second, he executed a one-page will leaving the shop and its contents to his sons. In addition to several specific bequests of his vehicle and firearms, Mr. White directed that Ms. White receive "[a]ny money left" after his debts, taxes, and funeral expenses were paid.[2] The will also named two of Mr. White's sons as the co-executors of his estate. Later, on April 1, 1998, Mr. White conveyed his one-third interest in the logging equipment to one of his sons.

Mr. White died at the age of sixty-four on November 2, 1998. On January 14, 1999, Ms. White filed a petition in the Probate Court for Giles County seeking to be appointed the administratrix of Mr. White's estate and to exercise her right to dissent from Mr. White's will. Thereafter, the two sons named as co-executors in Mr. White's February 4, 1998 will filed the will for probate. Two weeks later, Ms. Smith moved to intervene in the probate proceeding for the purpose of stating that, to her knowledge, the only personal property Mr. White possessed when he died consisted of his clothing, a "[b]roken down Datsun auto," and a pocket watch. On February 16, 1999, the probate court entered an order admitting the February 4, 1998 will to probate and appointing as co-executors the two sons Mr. White named in his will. On November 8, 1999, the co-executors filed a notice in the probate court that Mr. White's estate was insolvent.

On September 15, 2000, Ms. White filed a curious petition in the Chancery Court for Giles County.[3] In this petition, she first requested that "the entire [probate court] file should be transferred to the Chancery Court and treated as an appeal." Second, she requested the trial court to set aside Mr. White's February 4, 1998 conveyance of the .80–acre tract to their six children as a fraudulent conveyance. Finally, she requested the trial court to sell the .80–acre tract and to allow her to deduct her widow's share from the proceeds of the sale.

The trial court conducted a rather informal hearing on November 22, 2000. The family apparently agreed that the .80–acre tract should be sold because, as one of Mr. White's sons put it, the property "is not doing none of us no good." The sons also stated that they had found someone who would purchase the property for $25,000. However, Ms. White and her sons could not agree on the disposition of the sale proceeds. Ms. White insisted that she was entitled to deduct her widow's share from these proceeds, but at least five of the six sons disagreed with her because she had not shared with them the proceeds of the sale of a number of items of Mr. White's personal property.

The trial court instructed the parties to attempt to resolve their differences while it took up the rest of the docket. When the parties announced that they were at an impasse, the trial court held (1) that it lacked subject matter jurisdiction to consider an appeal from the probate court's orders, (2) that Ms. White was barred from asserting a fraudulent conveyance claim in this proceeding because a similar

2. This will was witnessed by the lawyer who prepared it and Ms. Smith.

3. The petition was so misdirected that the trial court apparently suggested to Ms. White's lawyer that he should find another lawyer to help him with the case. While Ms. White's lawyer discussed the case on at least one occasion with another lawyer, he did not retain co-counsel.

claim had already been dismissed in an earlier proceeding, and (3) that Ms. White did not have standing to seek a partition of the .80–acre tract because she had no interest in the property.[4] Ms. White has appealed.[5]

## II.

### APPELLATE JURISDICTION OF THE CHANCERY COURT

 Ms. White first takes issue with the trial court's conclusion that it lacked subject matter jurisdiction to review the decisions of the Giles County Probate Court.[6] The sum and substance of her argument on this point is her lawyer's observation that "[y]ears ago when this attorney started practicing law, the rule was that any claim could be made in the Probate Court and then moved to the Chancery Court." Notwithstanding what the state of the law may have been at some earlier time, the trial court's subject matter jurisdiction depends upon the existing statutes and constitutional provisions.[7]

Over two decades ago, the Tennessee General Assembly divested county courts and county judges of their probate jurisdiction in response to *Waters v. State ex rel. Schmutzer*, 583 S.W.2d 756 (Tenn. 1979).[8] In Tenn.Code Ann. § 16–16–201(a) (1994),[9] the General Assembly vested probate jurisdiction in the chancery courts

4. Ms. White had asserted in her petition that "one of the heirs, Jeff White, has now indicated he wants a partition sale." After Jeffery White stated in open court that he desired the property to be sold, the trial court determined that Mr. White's sons could sell the property but that Ms. White was not entitled to a share of the proceeds of the sale. The trial court's final order states, "If Mrs. White does not appeal this case then all six boys with an interest in this property can sell this property outright with the deed conveying the property."

5. For some reason, Ms. White's lawyer named the lawyer who represented both Ms. Smith and Mr. White's estate as an appellee. This lawyer has filed a brief on his own behalf but has not filed a brief on behalf of either Ms. Smith or Mr. White's estate. No other appearance has been made on behalf of Mr. White's estate, his co-executors, or the beneficiaries of his will. Thus, Mr. White's estate is unrepresented on this appeal. We also note with some regret that the briefs filed on behalf of both Ms. White and the lawyer who represented Ms. Smith and Mr. White's estate at trial do not meet the minimum requirements for acceptable briefs filed in this court.

6. Curiously, Ms. White first requests the court to address this issue, but then asserts that the issue is moot "because this case was moved from the Chancery Court of Giles County to the Court of Appeals." While the logic of this argument is not altogether apparent, we pre-

sume that Ms. White believes that the issue is moot because the case is now in this court and that this court can now review the decisions of the Giles County Probate Court based upon the trial court record. This belief is mistaken. What we have before us is an appeal from the Chancery Court for Giles County, not an appeal from the Giles County Probate Court. Our only task, therefore, is to review the decisions of the Chancery Court for Giles County. Looking at the case in this light, the question regarding the trial court's decision regarding its appellate jurisdiction is not moot.

7. The courts derive their subject matter jurisdiction from the Constitution of Tennessee or from legislative act. *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn.1996); *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn.1977); *SunTrust Bank v. Johnson*, 46 S.W.3d 216, 221 (Tenn.Ct.App.2000). They cannot exercise subject matter jurisdiction unless it has been conferred on them explicitly or by necessary implication. *Dishmon v. Shelby State Cmty. College*, 15 S.W.3d 477, 480 (Tenn.Ct.App.1999).

8. In *Waters v. State ex rel. Schmutzer*, the Tennessee Supreme Court invalidated a statute that undertook to vest the judicial powers of the county judge in the county executive.

9. Act of Apr. 18, 1980, ch. 875, 1980 Tenn. Pub. Acts 1254, as amended.

"[i]n all counties where not otherwise specifically provided by public, private, special or local acts...." The General Assembly also explicitly provided in Tenn.Code Ann. § 16–16–201(c) that appeals from a chancery court's decision while exercising its probate jurisdiction should be taken to this court.[10]

Both before and after the enactment of Tenn.Code Ann. § 16–16–201, a number of counties vested probate jurisdiction in their general sessions courts. By necessary implication, Tenn.Code Ann. § 16–16–201(c) applies to these courts. Accordingly, we have held that general sessions courts exercising probate jurisdiction are courts of record and that appeals from the decisions of these courts while exercising their probate jurisdiction should be taken to this court. *Ayers v. McLemore*, No. 13, 1989 WL 9534, at *1 (Tenn.Ct.App. Feb.10, 1989); *In re Estate of Williams*, Madison Law No. 1, slip op. at 7, 1985 Tenn.App. LEXIS 2889, at *12–13 (Tenn.Ct.App. May 23, 1985), *perm. app. granted and judgment amended* (Tenn. Nov. 18, 1985) (holding by the Tennessee Supreme Court that "appeals from the probate division of the General Sessions Court of Madison County should be taken to the Court of Appeals rather than the Circuit Court").

■ In 1973, the probate jurisdiction of the county judge for Giles County was transferred to the Giles County General Sessions Court.[11] By virtue of this private act, the Giles County General Sessions Court has subject matter jurisdiction over all probate matters within its jurisdiction. It necessarily follows that appeals from the decisions of the Giles County General Sessions Court when it is exercising probate jurisdiction must be filed in this court rather than the Chancery Court for Giles County. Accordingly, the trial court correctly determined that it lacked appellate jurisdiction to review the decisions of the Giles County Probate Court with regard to the probate of Mr. White's February 4, 1998 will.

■ However, the trial court erred by dismissing the portion of Ms. White's petition seeking appellate review of the probate court's decisions. When a case has been appealed to the wrong appellate court, Tenn.Code Ann. § 16–4–108(a)(2) provides that it should be "transferred to the court having jurisdiction thereof." Relying on this statute, the Tennessee Supreme Court vacated a judgment affirming a circuit court's dismissal of an appeal from a probate court and then remanded the case with directions that it be transferred to this court. *In re Estate of Williams*, Madison Law (Order granting Tenn. R.App. P. 11 application and amending judgment) (Tenn. Nov. 18, 1985). Accordingly, on remand, the trial court is directed to enter an order transferring Ms. White's petition for appellate review to this court for further proceedings.

### III.

### MS. WHITE'S FRAUDULENT CONVEYANCE CLAIM

■ In addition to an appellate remedy, Ms. White also asserted two other claims that fall within the trial court's subject

---

10. This provision rendered Tenn.Code Ann. § 27–4–102 (2000) essentially superfluous in probate matters.

11. Act of May 3, 1973, ch. 158, § 5, 1973 Tenn. Priv. Acts 540, 542. Even though the printed version of the 1973 private acts indicates that this act had not been approved by the Quarterly County Court by the time the private acts were printed, we presume that it must have been approved because the 1973 private act was amended in 1974, and the Quarterly County Court for Giles County duly approved the amendment.

matter jurisdiction. The first claim sought to set aside the February 4, 1998 deed conveying the .80–acre tract to Mr. White's six sons on the ground that it was a fraudulent conveyance. As best we can determine, Ms. White asserted this claim in the probate proceeding, in an earlier suit filed in the Chancery Court for Giles County, and in the present proceeding. During the November 22, 2000 hearing, Ms. White's lawyer conceded that she had filed another suit in the Chancery Court for Giles County seeking to set aside the February 4, 1998 deed as a fraudulent conveyance and that this complaint was dismissed on its merits. The record in this case contains no indication that Ms. White attempted to appeal this decision, and our records contain no indication of such an appeal.

■ Res judicata is a claim preclusion doctrine that bars a second suit between the same parties or their privies with regard to issues that were raised or could have been raised in the earlier proceeding. *Richardson v. Tennessee Bd. of Dentistry,* 913 S.W.2d 446, 459 (Tenn.1995); *State ex rel. Cihlar v. Crawford,* 39 S.W.3d 172, 178 (Tenn.Ct.App.2000). Because Ms. White unsuccessfully asserted her fraudulent conveyance claim in an earlier proceeding, the doctrine of res judicata prevents her from relitigating the same issue in this proceeding. She cannot use this appeal as a substitute for the appeal from the earlier decision that she never took. Accordingly, the trial court properly declined to consider Ms. White's fraudulent conveyance claim.

### IV.

#### Ms. White's Partition Claim

■ The second claim that falls within the trial court's jurisdiction is Ms. White's request that the .80–acre tract be sold for partition and that her widow's share and

one-year's support be deducted from the proceeds. The trial court dismissed this claim on the ground that Ms. White lacked standing to demand that the property be sold for partition. The trial court based its decision on the fact that Ms. White could not establish that she possessed an interest in the property.

■ Only persons with an ownership interest in real property can force a partition sale. They derive this right, not from the common law, but from the statutes creating the right. *Administration & Trust Co. v. Catron,* 171 Tenn. 268, 270, 102 S.W.2d 59, 60 (1937). Accordingly, partition claims are governed by Tenn. Code Ann. § 29–27–101 (2000) which provides:

> Any person having an estate of inheritance, or for life, or for years, in lands, and holding or being in possession thereof, as tenant in common or otherwise, with others, is entitled to partition thereof, or sale for partition. . . .

Under this statute, persons seeking a partition sale of property must demonstrate (1) that they have a present interest in the property and (2) that other persons also have an interest in the property. This is consistent with the general rule.

Ms. White correctly identified the applicable law but failed to acknowledge its impact on her claim. She could have the right to a partition sale only if she owned an interest in the .80–acre tract. Clearly she does not because the March 14, 1985 deed vested sole ownership of the property in Mr. White. Accordingly, the trial court properly dismissed Ms. White's petition for a partition sale.

### V.

We affirm the dismissal of the portions of Ms. White's petition seeking to set aside the February 4, 1998 deed as a fraudulent conveyance and a partition of the property.

We vacate the dismissal of Ms. White's petition for appellate review and remand the case to the trial court for further proceedings in accordance with Tenn.Code Ann. § 16–4–108(a)(2). We also find that this appeal is frivolous and direct the trial court, following the remand, to conduct a hearing to assess damages in accordance with Tenn.Code Ann. § 27–1–122 (2000). Finally, we tax the costs of this appeal to Mable White and her surety for which execution, if necessary, may issue.