# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### FEBRUARY 17, 2009 Session

## MICHAEL J. HOGAN v. JANET KATHERINE HOGAN

**Direct Appeal from the Chancery Court for Tipton County**
**No. 25068    William C. Cole, Chancellor**

---

**No. W2008-01750-COA-R3-CV - Filed August 27, 2009**

---

In this appeal, Father asks this Court to consider whether the arbitrator erred in finding California to be the home state of the parties' children under the UCCJEA, and in finding that Father failed to prove a material change of circumstances warranting modification of the parties' parenting plan. Mother asks us to consider whether, pursuant to Tennessee's Uniform Arbitration Act, Father is limited to the Act's statutory grounds for vacating or modifying the arbitration award. We find that the courts of this state do not have jurisdiction to enforce the parties' arbitration agreement or to modify the parties' parenting plan. Accordingly, the actions and orders of the trial court and the arbitrator are vacated, and the case is dismissed.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Vacated and Dismissed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Charles E. Hodum, Andrea B. Womack, Collierville, TN, for Appellant

Rachel L. Songstad, Arlington, TN, for Appellee

# OPINION

## I.  FACTS & PROCEDURAL HISTORY

Michael J. Hogan ("Father") and Janet Katherine Hogan ("Mother") were divorced on April 6, 2001, in the state of Washington, by a decree of dissolution.  On that same date, a parenting plan was entered  in which Mother was named the primary residential parent of the parties' two minor children, with Father receiving summer visitation.  The parenting plan further provided that "[b]oth parties acknowledge and agree that [Mother] is relocating to the State of California with the agreement and consent of [Father,]" and the plan allowed Father additional visitation when he was "physically in the vicinity of the residence of [Mother.]" Finally, the parenting plan included a provision requiring that "[d]isputes between the parties, other than child support disputes, shall be submitted to . . . arbitration by DRC of Kitsap County[, Washington]."  It further outlined the procedures to apply "[i]n the dispute resolution process" as follows:

(a)    Preference shall be given to carrying out this Parenting Plan.
(b)    Unless an emergency exists, the parents shall use the designated process to resolve disputes relating to implementation of the plan, except those related to financial support.
(c)    A written record shall be prepared of any agreement reached in counseling or mediation and of each arbitration award and shall be provided to each party.
(d)    If the court finds that a parent has used or frustrated the dispute resolution process without good reason, the court shall award attorneys' fees and financial sanctions to the other parent.
(e)    The parties have the right of review from the dispute resolution process to the superior court.

In July of 2001, Mother and the children moved to California, and in June of 2002, Father moved to Millington, Tennessee.  In June of 2006, the parties signed a Stipulation Regarding Temporary Variance to Parenting Plan and Child Support ("Stipulation"), whereby the children would reside with Father in Tennessee during the 2006-2007 school year.[1]  According to the Stipulation, the children were to reside with Father in Tennessee from June 26, 2006, until July 15, 2007, with the exception of Christmas break spent with Mother.  The Stipulation stated that "[t]he children shall return to the mother's primary care on July 15, 2007 pursuant to the parenting plan . . . unless the children express a desire and the parents can agree to extend their stay with the father for another school year."

Pursuant to the Stipulation, the children moved to Tennessee in July of 2006.  After the children had been living in Tennessee for approximately ten months, Father, on April 26, 2007, filed a Petition to Enroll Foreign Decree and to Modify the Parenting Plan as to Primary Residential Parenting Status in the Tipton County, Tennessee, Chancery Court, claiming a substantial and

---

[1] The Stipulation was not filed with any court.

material change of circumstance had occurred since the divorce, and seeking to be named the primary residential parent. On July 12, 2007, the Tipton County Chancery Court enrolled the decree, finding that Tennessee was the children's home state as neither the parties nor the children currently resided in Washington, no pleadings had been filed in California, and the children had resided in Tennessee for the six months prior to the filing. Mother filed a motion to dismiss Father's petition to modify and a memorandum of law in support of her motion on October 12, 2007. Mother claimed that Father had failed to state a claim upon which relief could be granted as his only alleged changes of circumstance were Mother's cohabitation with her boyfriend and the children's preference to remain with Father. Mother presented a marriage certificate showing that she was currently married, and she further claimed that absent a threshold showing of a material change of circumstance, the children's preference could not be considered.

On January 31, 2008, the Tipton County Chancery Court entered an Order on Mother's Motion to Dismiss Petition to Modify the Parenting Plan as to Primary Residential Parenting Status. The court dismissed Mother's motion to dismiss, finding it was not well taken. Instead, "[p]ursuant to the original Permanent Parenting Plan entered on April 6, 2001 [in the state of Washington]," the court ordered the parties to submit to arbitration with a mutually agreed upon arbitrator. Curiously, on February 14, 2008, the court entered an Order to Mediate Designating Mediator, which among other things, designated Dewey C. Whitenton as mediator, and required him to file a report pursuant to Tennessee Supreme Court Rule 31, sections 8 and 12(j).

On June 2, 2008, and June 3, 2008, the matter was heard for arbitration by Dorothy J. Pounders.[2] At the conclusion of Father's proof, Mother moved for an involuntary dismissal pursuant to Tennessee Rule of Civil Procedure 41.02. The arbitrator reserved her ruling on the motion until the close of all proof.

On June 10, 2008 the arbitrator issued her Findings of Fact and Conclusions of Law.[3] The arbitrator found as follows:

> The original decree rendered from the State of Washington recognized that the children['s] home[] state would be the State of California. There is nothing in the law that would require any filing on behalf of the mother to initiate an action in the State of California to designate the children's home state. The Arbitrator finds that the order from the State of Washington [wherein the parties agreed that the Mother would move to California] was sufficient to do so. As such, the State of California never lost jurisdiction over the children despite the agreement between the parties that they could reside temporarily in the State of Tennessee.

---

[2] Mother's brief states that "[d]ue to unforeseen circumstances Mr. Whitenton was unable to serve as arbitrator, and Dorothy J. Pounders was named the replacement arbitrator." However, no court order was entered reflecting such change.

[3] On July 7, 2008, the arbitrator filed a Notice of Filing Arbitrator's Report which incorporated a transcript of the June 10, 2008 proceedings, in which the arbitrator made oral findings.

In so finding, the arbitrator considered whether the Stipulation was valid and binding despite its not having been submitted as a court order. The arbitrator found that regardless of whether the Stipulation was valid, Tennessee did not have jurisdiction. The arbitrator stated that if she considered the Stipulation valid, it allowed the children only to come to Tennessee "for a limited period of time, for a limited purpose" and allowed an extension of the visitation only if the parents agreed. If she considered the Stipulation invalid, the Washington order, acknowledging California as the home state, controlled. Therefore, the arbitrator found that pursuant to Tennessee Rule of Civil Procedure 41.02, Mother was entitled to an involuntary dismissal of Father's petition to modify.

On July 3, 2008, Mother filed a Motion to Enforce Arbitration Order and for Attorney Fees and Costs in the Tipton County Chancery Court. After a hearing on Mother's motion, the trial court entered an order which incorporated the arbitrator's Findings of Fact and Conclusions of Law, and enforced the arbitrator's ruling.[4] It further denied Father's oral motion for a stay of the arbitrator's ruling and ordered that the children be returned to California on or before July 15, 2008.[5] On August 17, 2008, the arbitrator entered an Order of Special Master[6] in which she, again, concluded that Mother's motion for involuntary dismissal should be granted.

## II. ISSUES PRESENTED

Appellant has timely filed his notice of appeal and presents the following issues, restated as follows:

1.    Whether the Arbitrator erred in finding California to be the home state of the children under the UCCJEA;

2.    Whether the Arbitrator erred in granting Mother's Rule 41.02 motion, finding that Father failed to prove a material change of circumstance; and

3.    If Father established a material change of circumstance, whether it is in the children's best interest to remain in Tennessee, with Father acting as primary residential parent.

Additionally, Appellee presents the following issues, slightly restated, for our review:

---

[4] After this Court entered an Order Requiring Appellant to Obtain Final Judgment or to Show Cause, this order was filed on February 17, 2009.

[5] The trial court's order did not specifically address attorney fees and costs; however, it incorporated the arbitrator's Findings of Fact and Conclusions of Law, which declined to award attorney fees or costs.

[6] It is unclear why the arbitrator entered an order as a special master. At oral argument, both parties stated that the matter was properly submitted for arbitration; however, they disagreed whether such proceeding was binding.

1. Whether, under the Uniform Arbitration Act, Mr. Hogan is allowed to relitigate the facts and issues previously decided by arbitration.

2. Whether Mother should be awarded her reasonable attorney fees and suit expenses incurred in defending Father's appeal.[7]

For the following reasons, we find that the courts of this state are without jurisdiction to enforce the parties' arbitration agreement or to modify their parenting plan. We vacate the actions and orders of the trial court and the arbitrator, and we dismiss the case.

## III. DISCUSSION

### A. Uniform Arbitration Act

On appeal, Mother argues that because the parties entered into a written agreement submitting future disputes to arbitration, the Uniform Arbitration Act (the "Act"), Tennessee Code Annotated sections 29-5-301–320, governs. The Act provides, in part:

> (a) A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

> (b) The making of an agreement described in this section providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under this part and to enter judgment on an award thereunder.

Tenn. Code Ann. § 29-5-302 (2000).

Furthermore, Mother claims that because the Act controls, Father's right to appeal the arbitrator's award is limited by the terms of the Act. The Act provides that upon a party's application, a court shall confirm an arbitration award unless grounds for modifying or vacating the award are urged within the requisite time period. **Tenn. Code Ann. § 29-5-312 (2000)**. Upon a party's application, the court must vacate an arbitration award where:[8]

> (1) The award was procured by corruption, fraud or other undue means;

---

[7] This issue was not raised in the section of Mother's brief styled "Issues Presented." Instead, it was raised in the "Conclusion" section.

[8] An application for vacation of the award based on these grounds, other than corruption, fraud, or other undue means, must be made within ninety (90) days of delivery of the award to the applicant. **Tenn. Code Ann. § 29-5-313(b) (2000).**

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their power;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 29-5-306, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under § 29-5-303 and the party did not participate in the arbitration hearing without raising the objection.

Tenn. Code Ann. § 29-5-313 (2000). The court shall modify an arbitration award, where:[9]

(1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted;

(3) The award is imperfect in a matter of form, not affecting the merits of the controversy.

Tenn. Code Ann. § 29-5-314(a) (2000). Because Father relied upon none of the bases for modification or vacation of the award, Mother claims that Father's appeal must be denied.[10]

In support of her contention that the arbitrator's award was binding on the parties, Mother points to the statements of the arbitrator at the arbitration proceeding. The record reveals the following exchange:

> The Arbitrator: I would like to begin by advising you that arbitration, as you may know, is binding. You, both of you, I'm speaking to the litigants now, agreed

---

[9] An application for modification of the award must be made within ninety (90) days of delivery of the award to the applicant. **Tenn. Code Ann. § 29-5-314(a) (2000).**

[10] Mother claims that "Mr. Hogan never filed any application with the trial court requesting the trial court to modify, correct, or vacate the ruling issued by the Arbitrator." However, Father alleges that "[a]lthough missing from the record, counsel for Father orally moved the trial court to set aside the Arbitrator's ruling, but the motion was denied." Father does not state the grounds for his alleged motion.

in a parenting plan to dispose of issues by way of arbitration. Are both of you aware that this arbitration clause is part of the parenting plan? I'll ask the father first.

Mr. Hogan: Yes, ma'am.

. . . .

The Arbitrator: All right. By selecting arbitration you have also agreed that after putting on proof before an arbitrator that the arbitrator will have the authority to make a decision regarding the outstanding issues that you present. Do you both understand that to be the case?

Mr. Hogan: Yes, ma'am.

Ms. Hogan: Yes, ma'am.

The Arbitrator: All right. And do you understand that this arbitration order and what it will be is . . . findings of fact and conclusions of law by the Arbitrator. I will use my best efforts to have my written findings within five working days after we complete the arbitration hearing. The standard of review, once I have given you my Ruling is one that is very high. And by that I mean that if you don't like what I do, your lawyers have a very limited ability to appeal it. The standard of review, as I understand it, would be that my action as an arbitrator has been arbitrary, capricious, in other words, . . . with no merit, ignoring the facts and ignoring the evidence that is produced.

If I . . . am not acting in an arbitrary or capricious manner and I rule – and I related to the facts that you present, then I would suggest to you that it would be very difficult for you [to] appeal the Ruling. But your lawyers have agreed that this arbitration will be binding and that that standard that I just articulated would be the standard of review. Do you understand that to be the case, sir?

Mr. Hogan: Yes, ma'am.

The Arbitrator: And do you?

Ms. Hogan: Yes, ma'am.

Father offers several reasons as to why the Uniform Arbitration Act does not govern the parties' arbitration agreement, such that he is not limited to the grounds for vacating and modifying arbitration awards under the Act. First, he points to the plain language of the arbitration agreement which provides:

Disputes between the parties, other than child support disputes, shall be submitted to . . . arbitration by DRC of Kitsap County.

. . . .

In the dispute resolution process:

. . . .

(b) Unless an emergency exists, the parents shall use the designated process to resolve disputes relating to implementation of the plan, except those related to financial support.

. . . .

(e) The parties have the right of review from the dispute resolution process to the superior court.

Father claims that "[t]he agreement to arbitrate, by its terms, limits the dispute resolution process to that of issues concerning the implementation, rather than modification, of the Plan, as well as, guaranteeing the parties a right to have any decision made by an arbitrator reviewed by a judge." This language, he asserts, "unequivocally evidences the parties' intent that any arbitration of the Parenting Plan would be non-binding and the judicial review of any decision would be free from the standards set forth in such acts as the Uniform Arbitration Act."

As further support for his contention that the Act does not apply to the parties' arbitration agreement, Father claims that the agreement "was drafted pursuant to the laws of Washington State, which do not permit binding arbitration in cases of modification of parenting plans." Father cites a Washington case interpreting language identical to that used in the Hogans' parenting plan. In *In re Smith-Bartlett*, 976 P.2d 173, 175-76 (Wash. Ct. App. 1999), the Washington Court of Appeals considered the appropriate level of review of an arbitration award made pursuant to a parenting plan providing for mandatory arbitration with a "right of review from the dispute resolution process to the superior court." The court rejected the argument that the award was subject to vacation, modification, or correction only for limited statutory grounds, and held that "[a]s a general rule, when a statute provides for superior court review, it means de novo."[11] *Id.* at 178.

Next, Father contends that the arbitration agreement was not subject to the Act, because "[t]he record contains no reference to the Uniform Arbitration Act." He insists that the parties' intent that the arbitration be non-binding was reflected in the trial court's "Order to Mediate Designating a Mediator," which ordered Mr. Whitenton to serve as a Tennessee Supreme Court Rule 31 mediator and required him to file a report pursuant to Rule 31. Furthermore, Father points out that when the arbitrator opened the arbitration by stating that the proceedings would be binding and subject to the standards of review set forth in the Act, Father's counsel objected, stating:

_____

[11] A Washington statute requires that precise statutory language be included in every parenting plan. *Smith-Bartlett*, 976 P.2d at 177 (citing Wash. Rev. Code § 26.09.184). Such required language includes that the parties have the "right of review from the dispute resolution process to the superior court[.]" *Id.* (citing Wash. Rev. Code § 26.09.184(3)(e)).

[T]he parties agreed to arbitration. And it was not designated to be binding or not binding, . . . and there have been some discussion[s] back and forth between the parties whether it be binding or non-binding, but based upon the traditional nature of arbitration, if there's a dissolution in play, I understood the statement that if it is appealed it would be appealed to the [C]ourt of [A]ppeals of the State of Tennessee rather than the trial court.

And under that understanding, the fact that this is what the parties agreed to[,] . . . we're proceeding with the arbitration on that basis.

Finally, Father claims that "[i]t is contrary to public policy to submit issues concerning the best interest of minor children to any process which forecloses judicial review." He acknowledges that "Tennessee law does not explicitly state that the Uniform Arbitration Act is not applicable to arbitration agreements contained in parenting plans," but insists that the policies behind this state's parenting plan laws support such an interpretation. Father notes that the General Assembly has acknowledged that "a different approach to dispute resolution in child custody and visitation matters is useful[,]" **Tenn. Code Ann. § 36-6-401(b) (2005)** and has specifically defined "dispute resolution," in Tennessee Code Annotated section 36-6-402(1), in the context of the parenting plan statutes, as "the mediation process or alternate dispute resolution process in accordance with Supreme Court Rule 31 unless the parties agree otherwise." Rule 31 authorizes case evaluations, mediations, judicial settlement conferences, *non-binding arbitrations*, summary jury trials, mini-trials, or other similar proceedings. **Tenn. Sup. Ct. R. 31 § 2(n) (2008) (emphasis added)**. Furthermore, Father cites Tennessee Code Annotated section 36-6-404(a)(4)(F), which requires that parenting plans provide for dispute resolution, but directs that "[n]othing in this part shall preclude court action, if required to protect the welfare of the child or a party."

As we noted above, the Tennessee Uniform Arbitration Act applies to written agreements to arbitrate, and states that such agreements "providing for arbitration *in this state* confer[] jurisdiction on the court to enforce the agreement under this part and to enter judgment on an award thereunder." **Tenn. Code Ann. § 29-5-302(b) (2000) (emphasis added)**. This Court has considered whether an arbitration agreement must expressly list Tennessee as the arbitration forum in order for the Act to confer jurisdiction on the courts of this state. In *Dewitt v. Al-Haddad*, No. 89-394-II, 1990 WL 50727, at *1, 6 (Tenn. Ct. App. W.S. April 25, 1990), we held that the courts of Tennessee had jurisdiction over an arbitration agreement which failed to provide for arbitration in a specific state, but stated that such arbitration was pursuant to the bylaws of the American Seed Trade Association. Because the Commercial Arbitration Rules provided that when the location of the arbitration was in dispute, such location was to be decided by the AAA, we found that Tennessee could have been the site of the arbitration, and thus that jurisdiction was proper. *Id.* at *2. Relying on cases from other states that had adopted the Act, we stated that "if an agreement for arbitration could result in arbitration in Tennessee, then our courts have jurisdiction to confirm arbitration awards as long as [*i*]n personam jurisdiction requirements are met." *Id.* at *6.

Although we found in *Dewitt*, that pursuant to an open-forum provision, Tennessee could be the location of the arbitration, and therefore, that Tennessee had jurisdiction, such is not the case here. Unlike in *Dewitt*, where the parties expressly contracted to arbitrate in essentially any state, the Hogans expressly contracted to arbitrate in the state of Washington. There is no ambiguity or forum provision that provides that the parties would ever arbitrate in Tennessee. Thus, we find that because the Hogans' arbitration agreement did not provide "for arbitration in this state [,]" the trial court did not have jurisdiction to enforce the arbitration agreement pursuant to Tennessee Code Annotated section 29-5-302(b).

## B. UCCJEA

Having found that the UAA does not extend jurisdiction to the courts of this state to enforce the Hogans' arbitration agreement, we next consider whether jurisdiction is conferred pursuant to Tennessee's version of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Tennessee Code Annotated section 36-6-201 *et seq*, which "governs jurisdictional conflicts between Tennessee and other states over child custody." *Lee v. Lee*, No. W2003-01053-COA-R3-CV, 2004 WL 3021107, at *4 (Tenn. Ct. App. Dec. 29, 2004) (footnote omitted).

### 1. Jurisdiction to Modify

The UCCJEA provides that Tennessee may not modify a child-custody determination made by the court of another state unless Tennessee has jurisdiction to make an initial custody determination, based on home state[12] or "significant connections" jurisdiction, and either:

> (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under § 36-6-217 or that a court of this state would be a more convenient forum under § 36-6-221; or

> (2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

**Tenn. Code Ann. § 36-6-218.**

---

[12] "'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six (6) months immediately before the commencement of a child custody proceeding. In the case of a child less than six (6) months of age, "home state" means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period." **Tenn. Code Ann. § 36-6-205(7)**.

In the instant case, Tennessee does not have jurisdiction to make an initial custody determination because California is the children's home state.[13] This Court addressed whether an "extended visit" is enough to change a child's "home state" status in *Stanford v. Sylvain*, No. M2006-01782-COA-R3-JV, 2007 WL 1062080 (Tenn. Ct. App. Apr. 5, 2007). In *Stanford*, the child was born and legitimated in Georgia. *Id.* at *1. The mother then moved to Texas with the child and enrolled the Georgia legitimation order, which provided for summer visitation with the father. *Id.* The parties then agreed to allow the child to visit with the father in Tennessee from December 2004 to May 2005. *Id.* The father did not return the child in May, and he instead filed a petition to modify custody in October 2005. *Id.* This Court held that Tennessee did not have jurisdiction to modify the custody arrangement because the "period of temporary absence" from Texas was not a change of residence so as to give Tennessee home state jurisdiction. *Id.* at *7.

Likewise, in the instant case, Tennessee does not have "significant connections" jurisdiction. Significant connections can be found only where no other state qualifies as the child's home state, or the home state has declined to extend jurisdiction. **Tenn. Code Ann. § 36-6-216(a)(2)**. Here, California is the children's home state, and it has not declined to exercise jurisdiction. Thus, neither the trial court nor this court has the authority to modify the existing parenting plan.

## 2. Jurisdiction to Enforce

The UCCJEA, Tennessee Code Annotated, section 36-6-227, concerning enforcement of foreign child custody determinations, provides:

> (a) A court of this state shall recognize and enforce a child-custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this part, or the determination was made under factual circumstances meeting the jurisdictional standards of this part and the determination has not been modified in accordance with this part.

> (b) A court of this state may utilize any remedy available under other law of this state to enforce a child-custody determination made by a court of another state. The remedies provided in this part are cumulative and do not affect the availability of other remedies to enforce a child-custody determination.

Furthermore, Tennessee Code Annotated section 36-6-230 provides:

---

[13] The children had been living in California for over five years when Father filed his petition to enroll the parties' divorce decree and to modify the parenting plan.

(a) A court of this state may grant any relief normally available under the law of this state to enforce a registered child-custody determination made by a court of another state.

(b) A court of this state shall recognize and enforce, but may not modify, except in accordance with this part, a registered child-custody determination of a court of another state.

"Child custody determination" is defined by the UCCJEA as follows:

"Child custody determination" means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. "Child custody determination" includes a permanent, temporary, initial, and modification order. "Child custody determination" does not include an order relating to child support or other monetary obligation of an individual.

**Tenn. Code Ann. § 36-6-204(3).**

Although the arbitration agreement at issue was contained within the parties' parenting plan, we find that the term "child custody determination" applies only to those provisions "providing for the legal custody, physical custody, or visitation with respect to a child[,]" **Tenn. Code Ann. 36-6-204(3)**, and does not extend to allow enforcement of unrelated provisions merely because such provisions are contained within a parenting plan. Therefore, both the trial court and this Court are without authority to enforce the parties' arbitration agreement.


## C. Subject Matter Jurisdiction

On appeal, neither Mother nor Father argues that the trial court was without authority to order the parties to arbitration. However, failure of the parties to so argue does not cure a lack of subject matter jurisdiction. As we have previously explained:

Subject matter jurisdiction involves a court's power or authority to adjudicate a particular controversy brought before it; it relates to the cause of action itself. *State ex rel. Dept. of Social Services v. Wright,* 736 S.W.2d 84, 85 n. 10 (Tenn. 1987); *First American Trust Co. v. Franklin-Murray Development Company, L.P.,* 59 S.W.3d 135, 140 (Tenn. Ct. App. 2001). Thus, subject matter jurisdiction is an essential requirement for the granting of judicial relief both at trial and on appeal. *Id.* at 141. "The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated." *Id.* The question of whether a court has authority to modify a custody order is a matter of subject matter jurisdiction. *Gutzke v. Gutzke,* 908 S.W.2d 198, 201 (Tenn. Ct. App. 1995).

> Issues of the court's fundamental authority to decide a controversy are so important that courts must address them even if the parties do not raise them. *First American Trust Co.,* 59 S.W .3d at 140. In fact, parties cannot waive the requirement of subject matter jurisdiction or agree to confer jurisdiction on the court. *Id.* at 140-41.
>
> Courts derive their subject matter jurisdiction from the Constitution of Tennessee or from legislative act, *i.e.,* statute. *Meighan v. U.S. Sprint Communications Co.,* 924 S.W.2d 632, 639 (Tenn. 1996). Courts cannot exercise jurisdictional authority that has not been conferred on them directly or by necessary implication. *In re Estate of White,* 77 S.W.3d 765, 768 n. 7(Tenn. Ct. App. 2002); *Dishmon v. Shelby State Cmty. College,* 15 S .W.3d 477, 480 (Tenn. Ct. App. 1999).

*Lee v. Lee*, No. W2003-01053-COA-R3-CV, 2004 WL 3021107, at *7 (Tenn. Ct. App. Dec. 29, 2004).

Both the UAA and the UCCJEA, as adopted in this state, clearly set out the requirements for a Tennessee court to exercise jurisdiction over an arbitration agreement and a change of custody request, respectively. Unless the statutes confer jurisdiction, our courts have no authority to decide such issues. Because neither the UAA nor the UCCJEA confer jurisdiction in this case, and because we find no other basis for jurisdiction, we have no choice but to vacate the rulings and orders of both the trial court and the arbitrator and dismiss the case.

## IV. Conclusion

For the aforementioned reasons, we vacate the actions and orders of the arbitrator and the trial court, and deem all remaining issues pretermitted. The case is dismissed. Costs of this appeal are taxed to Appellant, Michael J. Hogan, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.